KWAN-SA YOU, PLAINTIFF v. CHARLES R. ROE, SAMUEL L. KATZ, DOROTHY
A. BYRD, CORINNE A. HOUPT, JEFFREY L. HOUPT, ALAN STOUDEMIRE
AND DUKE UNIVERSITY, DEFENDANTS

No. 8914SC316

(Filed 16 January 1990)

1. **Appeal and Error § 6.2 (NCI3d) — partial summary judgment — substantial right affected — appealable**

    Entry of summary judgment on all but three of plaintiff's claims in an action arising from the termination of his employment and his involuntary commitment affected a substantial right and the orders were therefore appealable prior to the final adjudication of the remaining claims.

    **Am Jur 2d, Appeal and Error § 104.**

2. **Appeal and Error § 6.2 (NCI3d) — discovery orders — interlocutory**

    Orders regarding discovery were interlocutory, plaintiff conceded that appropriate notice had not been given and that the issues were not ripe for appeal, and their merits were not discussed by the Court of Appeals.

    **Am Jur 2d, Appeal and Error §§ 79, 80.**

1

3. **Contracts § 27.2 (NCI3d) — termination of employment — breach of contract — summary judgment for defendant proper**

Summary judgment was properly granted in favor of defendant Duke University on plaintiff's breach of contract claim arising from the denial of his access to laboratory space in a specific building where laboratory space in a specific area was not a term of plaintiff's contract.

**Am Jur 2d, Master and Servant §§ 27, 43, 49.**

4. **Contracts § 34 (NCI3d) — termination of employment — malicious interference with contract — summary judgment for defendant proper**

Summary judgment was properly granted in favor of defendant Roe on a claim for malicious interference with contract arising from the termination of plaintiff's employment where plaintiff was an assistant professor of pediatrics in the Pediatric Metabolism Laboratory at Duke University; defendant Roe, as director of the Pediatric Metabolism Laboratory, recommended that plaintiff be terminated; and, although the record is replete with allegations of defendant Roe's motives, there is no evidence that defendant's actions were outside the scope of his authority as Director of the Pediatric Metabolism Laboratory and therefore were not legally malicious.

**Am Jur 2d, Master and Servant §§ 27, 43, 49.**

5. **Libel and Slander § 16 (NCI3d) — termination of employment — allegations of moral turpitude — summary judgment for defendants**

Summary judgment was properly granted for defendants in a slander action arising from the termination of plaintiff's employment and from his involuntary commitment where the record showed that the statements made by defendants were true.

**Am Jur 2d, Libel and Slander §§ 201, 266, 279, 322, 323, 398.**

6. **Libel and Slander § 16 (NCI3d) — employment termination letter — libel — qualified privilege — good faith**

Summary judgment should not have been granted for defendant Roe on a claim for libel per se arising from the termination of plaintiff's employment where plaintiff raised genuine issues of fact regarding the defense of qualified privilege and

defendant's good faith. A statement libelous per se raises the presumption of malice, which may be rebutted by qualified privilege; plaintiff must then prove actual malice, which may be proven by evidence of ill-will or personal hostility, or by showing that declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity. The evidence here was sufficient to raise a genuine issue of material fact as to whether defendant Roe's statements were made without good faith or probable cause and therefore constituted actual malice.

**Am Jur 2d, Libel and Slander §§ 201, 266, 279, 322, 323, 398.**

7. **Libel and Slander § 16 (NCI3d)— employment termination letter—liability of university under respondeat superior— summary judgment for defendant—improper**

Summary judgment should not have been granted for defendant Duke University in a libel action arising from an employment termination letter where plaintiff alleged that Duke University was responsible under the theory of respondeat superior. There was an issue of fact as to whether the author of the letter, defendant Roe, was acting in furtherance of Duke University and for purposes of accomplishing the duties of his employment when he wrote the termination letter.

**Am Jur 2d, Libel and Slander §§ 201, 266, 279, 322, 323, 398.**

8. **Rules of Civil Procedure § 15 (NCI3d)— medical malpractice against hospital—amendment of complaint—relation back**

The trial court erred by granting summary judgment in favor of defendant Duke University on the ground of the statute of limitations on a claim for medical malpractice arising from plaintiff's involuntary commitment where plaintiff had filed an amended complaint, there were no contradictory allegations in the amended complaint, and the allegations in the amended complaint were based on the same transaction or occurrence (defendant's involuntary commitment of plaintiff) as the original complaint. N.C.G.S. § 1A-1, Rule 15(c).

**Am Jur 2d, Hospitals and Asylums § 38; Pleadings §§ 320, 337.**

**9. False Imprisonment § 2.1 (NCI3d) — involuntary commitment — false imprisonment — summary judgment for Duke University improper**

The trial court erred by granting summary judgment in favor of Duke University on the issue of false imprisonment arising from plaintiff's involuntary commitment where Duke University admitted that its security officers, acting in the course and scope of their employment, escorted plaintiff to Meyer Ward, the psychiatric wing of Duke University Hospital, plaintiff asserted that he went against his will, and there was evidence that no magistrate had signed a commitment order. There was a genuine issue of material fact as to whether plaintiff was falsely imprisoned by the acts of the officers.

**Am Jur 2d, False Imprisonment §§ 10, 51, 56, 130.**

**10. Malicious Prosecution § 13.2 (NCI3d) — involuntary commitment — probable cause — summary judgment for defendant proper**

Summary judgment was properly granted for defendant Stoudemire on a malicious prosecution claim arising from plaintiff's involuntary commitment where defendant Stoudemire exercised his professional judgment in executing the petition for commitment based on the information brought to his attention by other defendants in this case and his perceptions of plaintiff after two interviews. There were no facts to support plaintiff's claim that Dr. Stoudemire acted without probable cause.

**Am Jur 2d, Malicious Prosecution §§ 71, 72.**

**11. Process § 19 (NCI3d) — abuse of process — involuntary commitment — summary judgment for defendant proper**

The trial court properly granted summary judgment for defendant Dr. Stoudemire in a claim for abuse of process arising from plaintiff's involuntary commitment where plaintiff failed to raise an issue of fact regarding ulterior motive or an act in the use of process that would be the basis of a claim.

**Am Jur 2d, Abuse of Process §§ 4, 12, 22.**

Judge GREENE concurs in the result.

YOU v. ROE

[97 N.C. App. 1 (1990)]

APPEAL by plaintiff from orders entered 30 November 1984 by *Judge Thomas H. Lee*, 5 February 1986 by *Judge D. B. Herring, Jr.*, 21 September 1988 by *Judge Anthony M. Brannon*, and 20 September 1988 and 11 October 1988 by *Judge Henry W. Hight, Jr.*, in DURHAM County Superior Court. Heard in the Court of Appeals 13 October 1989.

This is an action in tort arising out of plaintiff's termination from employment and his involuntary commitment. The following facts do not appear to be disputed. In 1977 plaintiff began working as assistant professor of pediatrics in the Pediatric Metabolism Laboratory at Duke University. Plaintiff had been hired for the position by Dr. Charles R. Roe, director of the laboratory and one of the defendants here. On 24 May 1982 defendant Roe sent a letter to plaintiff purporting to dismiss him as of 1 April 1983; a copy of this letter was sent to Dr. Katz, Chairman of the Department of Pediatrics. Pursuant to an administrative appeal plaintiff's employment was extended until 1 October 1983.

Plaintiff alleges that in the interim several meetings and discussions about plaintiff took place with and among the various defendants. On 3 September 1982 plaintiff met with Dr. Roe to discuss the letter of termination. Defendant Byrd, Administrative Assistant to the Division of Pediatric Metabolism, was also in attendance and took the minutes of the 3 September 1982 meeting. During the meeting Dr. Roe accused plaintiff of failing to divulge certain reagent recipes used in the laboratory. Plaintiff denied these allegations. Dr. Roe informed plaintiff that if he did not comply with the request to turn over these recipes and train technical personnel to make the reagents by 7 September 1982 plaintiff's privileges in the Pediatric Metabolism Laboratory would be terminated.

On 23 September 1982 plaintiff met with Dr. Roe and Robert Metcalf, an administrator of Duke University. This meeting was to "explore the options available to Dr. You." Ms. Byrd took the minutes of this meeting also. It is apparent from the record that plaintiff had been offered laboratory space by a Dr. Clark and that during this meeting plaintiff refused to say whether he would accept the offer. Dr. Roe was adamant that plaintiff would not be allowed to use laboratory space and facilities in the Pediatric Metabolism Laboratory. However, he allowed plaintiff to remain on the premises through 29 September 1982 when plaintiff was scheduled to meet with Dr. Katz.

Plaintiff alleges that at approximately 1:00 p.m. on 30 September 1982 he arrived at his office and found a locksmith changing the locks on his office door as well as the other doors in the laboratory. Later that afternoon Dr. Katz told plaintiff to remove his materials from his office. Plaintiff also alleges that on or about 28 October 1982 Dr. Katz wrote plaintiff a letter informing him that he no longer had any duties in or access to the Pediatric Metabolism Laboratory.

Plaintiff also alleges that on or about 30 September 1982 defendants Roe, Katz, Byrd, Corinne Houpt, Jeffrey Houpt and Stoudemire made false and slanderous statements concerning plaintiff's mental condition. Plaintiff alleges that these statements were all "maliciously or willfully, wantonly and recklessly made." Plaintiff alleges he was involuntarily committed as a result of these statements and that his professional reputation was damaged. Plaintiff also asserted claims for breach of employment contract, conversion of personal property, civil conspiracy, false imprisonment, negligence and intentional infliction of emotional distress. Plaintiff sued Dr. Stoudemire for negligent and intentional abuse of the commitment process and for medical malpractice. Plaintiff amended his complaint to allege that he was falsely imprisoned by Duke when university security officers escorted him to the psychiatric ward of Duke University Hospital. Plaintiff also alleged that he was held in the psychiatric ward beyond the period allowed by statute and in violation of statutory safeguards. Plaintiff's claims against Duke University are based on *respondeat superior*.

At various times throughout pretrial discovery, plaintiff requested certain information that defendants asserted was protected by the attorney-client privilege. Plaintiff's various motions to compel discovery of this information were denied by the trial court (orders filed 5 July 1984, 30 November 1984 and 5 February 1986). The trial court entered summary judgment in favor of defendants Roe, Katz, C. Houpt, J. Houpt and Byrd on all claims and in favor of Duke University on all claims except false imprisonment and medical malpractice (order filed 20 September 1988). The trial court also entered summary judgment in favor of Duke University on medical malpractice, false imprisonment and violation of Art. 5A, Ch. 122 (recodified as Ch. 122C, part 7) (order filed 21 September 1988). Later the trial court granted summary judgment in favor of defendant Stoudemire on all claims except medical malpractice, false imprisonment and violation of Art. 5A, Ch. 122 (order filed

11 October 1988). These latter claims against Dr. Stoudemire are the only claims remaining. Plaintiff appeals from the above orders.

*Grover C. McCain, Jr. and Phyllis Moore for plaintiff-appellant.*

*Moore & Van Allen, by N. A. Ciompi, Charles R. Holton and Barry L. Creech, for defendants-appellees, Roe, Katz, Byrd, C. Houpt, J. Houpt, and Duke University.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Alene M. Mercer and Susan K. Burkhart, for defendant-appellee Stoudemire.*

EAGLES, Judge.

[1] Where a motion for summary judgment is granted, the critical questions for determination on appeal are whether, on the basis of materials presented to the trial court, there is a genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Oliver v. Roberts*, 49 N.C. App. 311, 271 S.E.2d 399 (1980), *cert. denied*, 276 S.E.2d 283 (1981). Here the trial court entered summary judgment on all of plaintiff's claims against all defendants except medical malpractice, false imprisonment and violation of Art. 5A, Ch. 122 (recodified as Ch. 122C, part 7) against Dr. Stoudemire. It is well recognized that an appeal normally does not lie from an interlocutory order. *Veazey v. Durham*, 231 N.C. 357, 57 S.E.2d 377 (1950). An interlocutory order is an order made during the pendency of the case which adjudicates the rights and liabilities of fewer than all the parties, or adjudicates fewer than all claims in the action. *Id.* at 362, 57 S.E.2d at 381. However, where "partial summary judgment is final as to the matters adjudicated therein, or if it affects a substantial right, it is immediately appealable." *Beck v. American Bankers Life Assurance Co.*, 36 N.C. App. 218, 220, 243 S.E.2d 414, 416 (1978). Entry of summary judgment against plaintiff on all of his claims except the three listed above affects a substantial right of plaintiff. The orders are therefore appealable prior to final adjudication of the remaining claims.

After careful consideration of the record on appeal and plaintiff's arguments, we affirm the trial courts' orders granting summary judgment on the issues of breach of contract, malicious interference with contract, slander, malicious prosecution and abuse of process in favor of defendants. However, we vacate the trial

courts' orders on the issues of libel, medical malpractice by Duke University and false imprisonment and remand the case for further proceedings.

## I.  Discovery Orders.

[2]  Plaintiff's first two assignments of error relate to the denial of his motions to compel discovery. Plaintiff concedes in his brief that orders regarding discovery are interlocutory and "appropriate notice has not been given." Therefore, plaintiff asserts that these two assignments of error are not ripe for appeal. We decline to discuss their merits.

## II.  Breach of Contract, Malicious Interference with Contract, Defamation and Conspiracy.

Plaintiff argues that the trial court erred in granting partial summary judgment on the issues of breach of contract, malicious interference with contract and defamation. Plaintiff has abandoned his claim for civil conspiracy.

## A.  Breach of Contract.

[3]  Plaintiff alleges that he was denied access to laboratory space for one year during his employment and he asserts that access to laboratory space was part of his employment contract with Duke University. Duke asserts that the record shows plaintiff was offered alternative laboratory space but plaintiff refused the offer. Plaintiff relies on Dr. Katz's letter of appointment (addressed to the Dean of Medical and Allied Health Education, not plaintiff) which states that:

> Dr. You will work on a full time 12 month basis and will be entitled to the fringe benefits described in the faculty package for those at his rank. His office and laboratory space will be located in Dr. Roe's area on the second floor of the Bell Building.

Plaintiff asserts that laboratory space in this specific building and area was a term of his employment contract. We cannot agree and therefore we find that, on this record, laboratory space in a specific area was not a term of plaintiff's contract. The trial court correctly granted summary judgment in favor of Duke University on plaintiff's breach of contract claim.

B.  Malicious Interference with Contract.

[4]  Plaintiff also alleges that Dr. Roe maliciously interfered with his employment contract by recommending that plaintiff be terminated. Plaintiff asserts that there is a genuine issue of fact whether Dr. Roe acted with malice. Dr. Roe asserts that since he was not an "outsider" to the employment contract he cannot be liable for malicious interference with that contract. Although we do not agree with defendant Roe's argument as to the significance of not being an outsider to the contract, the trial court was correct in granting summary judgment on this issue.

Under North Carolina law, a third party who induces one party to terminate or fail to renew a contract with another may be held liable for malicious interference with the party's contractual rights if the third party acts without justification. "Recent cases hold that one need not be an outsider in order to be held liable for malicious interference with contract." *Murphy v. McIntyre*, 69 N.C. App. 323, 329, 317 S.E.2d 397, 401 (1984). In order to establish the tort of malicious interference with a contract right, the plaintiff must prove:

> First, that a valid contract existed between the plaintiff and a third person. . . . Second, that the outsider had knowledge of the plaintiff's contract with the third person. Third, that the outsider intentionally induced the third person not to perform his contract with the plaintiff. Fourth, that in so doing the outsider acted without justification. Fifth, that the outsider's act caused the plaintiff actual damages.

*Smith v. Ford Motor Co.*, 289 N.C. 71, 84-85, 221 S.E.2d 282, 290 (1976). Plaintiff contends that the existence of his contract, defendant Roe's knowledge of that contract and Roe's role in inducing the contract's termination have all been established. Plaintiff argues that the materials before the court raise a genuine issue on the element of justification. Plaintiff asserts that a forecast of evidence of legal malice will rebut a showing by defendant of justification for his actions. See *Ramsey v. Rudd*, 49 N.C. App. 670, 673, 272 S.E.2d 162, 164 (1980), *disc. rev. denied*, 302 N.C. 220, 276 S.E.2d 917 (1981). Legal malice means

> intentionally doing a wrongful act or exceeding one's legal right or authority in order to prevent the making of a contract between two parties. The action must be taken with the de-

sign of injuring one of the parties to the contract or of gaining some advantage at the expense of a party. Plaintiff's evidence must show that defendant had no *legal* justification for his action; proof of actual malice is not sufficient.

*Murphy*, 69 N.C. App. at 328-29, 317 S.E.2d at 401 (citations omitted).

The record is replete with allegations of defendant Roe's motives. However, there is no evidence that defendant's actions were outside the scope of his authority as Director of the Pediatric Metabolism Laboratory. Therefore, defendant Roe's actions were not legally malicious. There is no genuine issue of fact on this issue and summary judgment was properly granted in favor of defendant.

C.  Defamation.

(1) Slander.

[5]  Plaintiff also alleges that statements made by various defendants were false, and were maliciously made to discredit plaintiff. Specifically, plaintiff argues that defendants Roe, Katz and Byrd made the following "untrue and defamatory statements" about him:

1. He was threatening staff members of the Pediatric Metabolism Laboratory with acids;

2. He was making bombs in the laboratory;

3. He had a history of violently abusing his wife; [and]

4. He wrote letters to his wife threatening to kill her and the children.

Plaintiff argues that these statements constitute slander per se because they involve allegations of moral turpitude. The defendants have asserted in defense the truth of the statements and a qualified privilege in making the statements. Plaintiff asserts that the facts before the trial court raised a genuine issue regarding the truth of the statements and the declarants' actual malice.

The record before us shows that the statements related above were true. There is evidence that plaintiff acted peculiarly on two occasions when in the laboratory, mixing acid and another substance together and placing the hot and smoking flask in the employees' hands. These instances were the basis of the statement that plaintiff was threatening employees with acid. The statement regard-

ing a bomb also has a basis in fact. Although the facts tend to show that the statement was a misunderstanding of what plaintiff meant, there is no dispute that plaintiff stated that "the bomb has been dropped" and the "wires are burning." The statements regarding plaintiff's abuse of his wife and threats to her and their children are also based on fact. There is plenary evidence in the record to support the statements that plaintiff had abused his wife physically and had written threatening letters to her while she was out of the country. Because we find no facts that raise a genuine issue regarding the statements' truthfulness, we need not discuss defendants' assertion of a qualified privilege and plaintiff's assertion of actual malice.

(2) Libel.

[6] Plaintiff argues in his brief that the termination letter written by Dr. Roe constituted libel per se because it tended to impeach plaintiff in his trade or profession. The letter stated that plaintiff was being terminated because he abandoned his responsibilities as assistant director of the clinical laboratory, he was reluctant to push himself toward grant deadlines and he was unwilling to provide recipes of ingredients to the technical staff. Plaintiff has alleged that Dr. Roe maliciously communicated these false charges to Dr. Katz to justify plaintiff's termination. Defendant Roe asserted as his defense the truth of the matters asserted and that his statements were protected by a qualified privilege. Plaintiff argues that actual malice on defendant's part defeats the defense of qualified privilege.

Plaintiff has raised a genuine issue of fact on the defense of qualified privilege.

A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communica-

tion concerning a matter in which the parties have an interest or duty.

*Pressley v. Continental Can Co.*, 39 N.C. App. 467, 469-70, 250 S.E.2d 676, 678, *disc. rev. denied*, 297 N.C. 177, 254 S.E.2d 37-38 (1979). Plaintiff has raised an issue of Dr. Roe's good faith. Where a statement is libel per se, that is, "a false written statement which on its face is defamatory," *Robinson v. Nationwide Ins. Co.*, 273 N.C. 391, 393, 159 S.E.2d 896, 899 (1968), there is a presumption of malice. *Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 284, 182 S.E.2d 410, 414 (1971). However, a finding of qualified privilege rebuts the inference of malice and makes it necessary for the plaintiff to prove actual malice before he can recover. *Id.* at 285, 182 S.E.2d at 414-15.

Actual malice may be proven by evidence of ill-will or personal hostility on the part of the declarant, see *Ponder v. Cobb*, 257 N.C. 281, 294, 126 S.E.2d 67, 76 (1962), or by a showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity. *Ward v. Turcotte*, 79 N.C. App. 458, 460, 339 S.E.2d 444, 446-47 (1986). Here there is also an issue of fact whether there was personal hostility between plaintiff and Dr. Roe. Plaintiff alleges and asserts in his deposition that Dr. Roe and he had been "at odds" for some time prior to receiving the letter of termination. Plaintiff alleges that this personal hostility was the basis for his termination. However, plaintiff also argues that Dr. Roe wanted to change the focus of research in the laboratory and for that reason Dr. Roe wanted to terminate plaintiff. This evidence is sufficient to raise a genuine issue of material fact whether Dr. Roe's statements were made without good faith or probable cause and therefore constituted actual malice. For this reason we hold that summary judgment was improvidently granted on this issue.

[7] We note that plaintiff has asserted that Duke University is liable for the statements of Dr. Roe on the theory of *respondeat superior*. To be liable on the theory of *respondeat superior*, the employee must be acting in furtherance of the principal's business and for the purposes of accomplishing the duties of his employment at the time of the incident. *See Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 140-41 (1986). If an employee departs from that

purpose to accomplish a purpose of his own, the principal is not liable. *Id.* If Dr. Roe's statements are found to be in furtherance of a malicious purpose of his own, they are outside the scope of his employment and Duke University cannot be held liable. Because there is an issue of fact as to whether Dr. Roe was acting in furtherance of the business of Duke University and for purposes of accomplishing the duties of his employment when he wrote the termination letter, summary judgment for Duke University on the libel issue was also improvidently granted.

### III. Medical Malpractice of Duke University.

[8] Plaintiff argues that the trial court erred in granting summary judgment in favor of Duke University on the issue of medical malpractice. Plaintiff's original complaint, filed 23 May 1983, asserted causes of action against Duke based on the actions of Roe, Katz, Byrd, C. Houpt, J. Houpt and Stoudemire. Plaintiff's original complaint also alleged that:

> 11. . . . plaintiff was taken into custody by employees and agents of Duke University at approximately 10:15 a.m. on October 1, 1982 and plaintiff was held involuntarily against his will and in deprivation of his freedom and civil rights, until he was discharged approximately 70 hours later, having been found not to be a threat or dangerous to himself or others.
>
> * * *
>
> 21. As a result of the negligence and intentional abuse of the commitment process, plaintiff was caused to be deprived of his liberty, freedom and civil rights and suffered extreme embarrassment, mental suffering and damage to his professional reputation. As a result of these acts, plaintiff will also suffer a permanent diminishment of income and wages.

On 29 October 1985 plaintiff moved to amend his complaint. Plaintiff's motion was allowed and the trial court reserved judgment on whether the allegations in the amended complaint would "relate back" to the filing date of the original complaint. On 5 December 1985 plaintiff filed his amended complaint which included the allegations that:

> 43. Defendant Stoudemire, as well as other employees and agents of Duke University, were negligent in, but not limited to, the following particulars:
>
> * * *

(c) Dr. Mary Catherine Wimer, Dr. David Winecoff, and Dr. Noni Wiencrot were also negligent. They failed to apply that degree of professional knowledge, skill, and training which similarly situated psychiatrists employ, in their treatment of Plaintiff. These psychiatrists failed in their duty to familiarize themselves thoroughly with Plaintiff's case. They, as well as Dr. Stoudemire, had a duty to corroborate the second-hand information which served as a basis for Plaintiff's commitment. They also failed in their duty to make an on-going assessment and re-assessment of Plaintiff and have him released anytime it appeared he was not dangerous.

These psychiatrists did not check in on the Plaintiff adequately during his confinement. Dr. Wimer did not check on Plaintiff after her initial meeting with him on his first day of confinement on October 1, 1982, until the morning of his discharge, October 4, 1982. According to the nurses' notes, Dr. Wiencrot made one brief visit to the Plaintiff's room during his confinement between 1:00 and 1:30 on Saturday, October 2, 1982. There is no evidence of Dr. Winecoff ever checking on the Plaintiff.

Additionally, these psychiatrists failed in their duty to communicate with Dr. Stoudemire concerning the Plaintiff's condition.

(d) The nursing staff on the Meyer Ward at Duke University Hospital was negligent in failing to apply that degree of professional knowledge, skill, and training which similarly situated nurses employ. Although they kept noting Plaintiff's behavior as "appropriate," they failed to assess that Plaintiff was not dangerous and call it to the attention of their supervisors.

Plaintiff argues that the amended complaint relates back to the original complaint and the additional allegations are therefore timely. Duke asserts that the original complaint did not give notice of the transactions or occurrences that were the basis of plaintiff's claim of medical malpractice against Duke; the only claims made against Duke were grounded in intentional tort and defamation.

Rule 15(c) of the North Carolina Rules of Civil Procedure provides that:

A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

G.S. 1A-1, Rule 15(c). As our Supreme Court has stated, "[w]hether an amended complaint will relate back to the original complaint does not depend upon whether it states a new cause of action but instead upon whether the original pleading gave defendants sufficient notice of the proposed amended claim." *Pyco Supply Co. v. American Centennial Ins. Co.*, 321 N.C. 435, 442, 364 S.E.2d 380, 384 (1988). "[T]he decisive test for relation back remains *notice* in the original pleading of the transactions or occurrences to be proved pursuant to the amended pleading." *Estrada v. Jaques*, 70 N.C. App. 627, 633, 321 S.E.2d 240, 245 (1984).

Duke University's reliance on *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984), is misplaced. In *Henry*, the court held that the trial court did not abuse its discretion in denying the plaintiff's motion to amend his complaint where the amended complaint included allegations that were directly contrary to those in the original complaint. *Id.* at 84, 310 S.E.2d at 332. This type of "ambush" was not allowed. Here, however, there are no contradictory allegations. Additionally, the allegations of the amended complaint are based on the same transaction or occurrence (i.e., defendants' involuntary commitment of plaintiff) as the original complaint. Therefore, pursuant to Rule 15(c), plaintiff's amended complaint should be deemed to relate back to the filing date of the original complaint. The trial court erred in granting summary judgment in favor of Duke University on this claim.

## IV. False Imprisonment by Duke University.

[9] Plaintiff argues that the trial court erred in granting Duke University summary judgment on the issue of false imprisonment. Plaintiff asserts that when the officers took him from Dr. Stoudemire's office to Meyer Ward they falsely imprisoned him. Plaintiff alleges that he did not consent to being taken to Meyer Ward, the officers had no order for his commitment and did not take him before a magistrate to obtain a commitment order as required by statute. Plaintiff alleges that the actions of the Public Safety Officers are imputed to Duke University.

Duke University relies on *Sumblin v. Craven County Hospital Corp.*, 86 N.C. App. 358, 357 S.E.2d 376 (1987), to argue that it cannot be liable for the acts of a person's private physician in committing that person involuntarily. Defendant's reliance is misplaced. Although plaintiff may have complained of false imprisonment based on his term of involuntary hospitalization, in his brief he only argues that he was falsely imprisoned when the Duke University security officers escorted him to Meyer Ward. Any other bases for plaintiff's false imprisonment claim have been abandoned for failure to argue them in his brief. N.C. App. R. 28(a). Therefore, the only issue properly before this court on plaintiff's false imprisonment claim is plaintiff's assertion that by escorting him to Meyer Ward the University's Public Safety Officers falsely imprisoned him.

Plaintiff asserts that he was entitled to summary judgment on this issue since, in its answer, Duke University admitted that "the officers of the Duke Public Safety Department, acting in the course and scope of their employment and duties, escorted the Plaintiff to Meyer Ward, the psychiatry wing at Duke University Hospital."

False imprisonment is the illegal restraint of a person. While actual force is not required, there must be an implied threat of force which compels a person to remain where he does not wish to remain or go where he does not wish to go. *Black v. Clark's Greensboro, Inc.*, 263 N.C. 226, 139 S.E.2d 199 (1964). Indeed, we have specifically held that:

> Force is essential only in the sense of imposing restraint. . . . If the words or conduct are such as to induce a reasonable apprehension of force, and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty as by prison bars.

*Hales v. McCrory-McLellan Corp.*, 260 N.C. 568, 570, 133 S.E.2d 225, 227 (1963). Plaintiff alleged that "[F]our Duke University security officers took him into custody and escorted him to Meyer Ward, the psychiatry wing of the Duke University Hospital." Defendant answered saying that "the officers of the Duke Public Safety Department, acting in the course and scope of their employment and duties, escorted the plaintiff to Meyer Ward, the psychiatry wing at Duke University Hospital." Because Duke admitted that its security officers, acting in the course and scope of their em-

ployment with Duke, escorted plaintiff to Meyer Ward and plaintiff asserts he went against his will, there is a genuine issue of fact whether plaintiff was falsely imprisoned by the acts of these officers. There is also evidence that at the time the security officers escorted plaintiff from Dr. Stoudemire's office, no magistrate had signed a commitment order. Therefore, summary judgment in favor of Duke on the issue of false imprisonment must be vacated.

### V. Summary Judgment in Favor of Dr. Stoudemire.

Plaintiff also argues that the trial court erred in granting summary judgment in favor of Dr. Stoudemire on the issues of malicious prosecution and abuse of process. Plaintiff has abandoned his appeal on the issues of defamation and civil conspiracy. We affirm the entry of summary judgment in favor of Dr. Stoudemire on the issues of malicious prosecution and abuse of process.

### A. Malicious Prosecution.

[10] Plaintiff asserts that the institution of involuntary commitment proceedings was sufficient to show malicious prosecution because there is evidence that Dr. Stoudemire acted on secondhand information that could have been investigated prior to plaintiff's commitment. Dr. Stoudemire asserts that summary judgment was appropriate because the commitment of plaintiff was not wrongful. Dr. Stoudemire had probable cause to find that plaintiff was mentally ill and dangerous to himself and others. Dr. Stoudemire also argues that if the commitment was wrongful, he did not institute the proceedings, but was a mere witness to those proceedings.

In an action for malicious prosecution the plaintiff must show that the defendant initiated an earlier proceeding, maliciously and without probable cause, and that the earlier proceeding terminated in plaintiff's favor. *Stanback v. Stanback*, 297 N.C. 181, 202, 254 S.E.2d 611, 625 (1979). "Additionally, in malicious prosecution cases based on underlying civil actions, the plaintiff must prove special damages." *U v. Duke University*, 91 N.C. App. 171, 177, 371 S.E.2d 701, 706 (1988).

We find no facts that would support plaintiff's claim that Dr. Stoudemire acted without probable cause. Dr. Stoudemire testified in his deposition that while he was talking to plaintiff the second time he concluded that plaintiff should be involuntarily committed. Based on the information brought to his attention by other defendants in this case and his perceptions of plaintiff after two

YOU v. ROE

[97 N.C. App. 1 (1990)]

interviews, Dr. Stoudemire exercised his professional judgment in executing the petition for commitment. These facts do not raise a genuine issue of fact on plaintiff's claim of malicious prosecution. Accordingly, summary judgment was appropriately granted.

B.   Abuse of Process.

[11]   Plaintiff argues that his involuntary commitment for 72 hours constituted an abuse of process since the statutes then effective provided for only 24 hours of "observation" before an involuntarily committed person must be released. Defendant argues that plaintiff has not raised a genuine issue regarding an act that would sustain the charge of abuse of process.

"There are two essential elements for an action for abuse of process, (1) the existence of an ulterior motive, and (2) an act in the use of the process not proper in the regular prosecution of the proceeding." *Ellis v. Wellons*, 224 N.C. 269, 271, 29 S.E.2d 884, 885 (1944). "[T]he gravamen of a cause of action for abuse of process is the improper use of the process after it has been issued." *Petrou v. Hale*, 43 N.C. App. 655, 659, 260 S.E.2d 130, 133 (1979), *disc. rev. denied*, 299 N.C. 332, 265 S.E.2d 397 (1980). Plaintiff has failed to raise an issue of fact regarding Dr. Stoudemire's ulterior motive. Additionally, plaintiff has not raised an issue of fact regarding "an act in the use of the process" that would be the basis of an abuse of process claim. Therefore, summary judgment in favor of Dr. Stoudemire was properly granted.

In summary, the orders of the trial court granting summary judgment on the issues of breach of contract, malicious interference with contract, slander, malicious prosecution and abuse of process are affirmed. Plaintiff has failed to assign as error or brief the trial court's action on his claim for conversion. It is deemed abandoned. N.C. App. R. 10(c); N.C. App. R. 28(a). However, those portions of the orders that grant summary judgment in favor of the various defendants on the claims based on libel, medical malpractice and false imprisonment are vacated and the cause is remanded for further proceedings in the trial court. All other assignments of error have been abandoned by plaintiff.

Affirmed in part, vacated in part and remanded.

Judge PARKER concurs.

Judge GREENE concurs in the result.