**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1827**

---

STEPHANIE A. WALKER,

       Plaintiff – Appellant,

   v.

PETSENSE, LLC; TRACTOR SUPPLY COMPANY,

       Defendants – Appellees.

---

**No. 22-2133**

---

STEPHANIE A. WALKER,

       Plaintiff – Appellant,

   v.

PETSENSE, LLC; TRACTOR SUPPLY COMPANY,

       Defendants – Appellees.

---

Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, District Judge.  (1:20-cv-00738-LCB-JEP)

---

Argued:  October 25, 2023                    Decided:  March 18, 2024

2

Before WILKINSON, NIEMEYER, and BENJAMIN, Circuit Judges.

———————

Vacated in part and affirmed in part by unpublished opinion.  Judge Benjamin wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

———————

**ARGUED:**  Quintin DeVon Ithiel Byrd, Q BYRD LAW, Raleigh, North Carolina, for Appellant.    Jefferson P. Whisenant, OGLETREE DEAKINS NASH SMOAK & STEWART, PC, Raleigh, North Carolina, for Appellees.  **ON BRIEF:** Kevin S. Joyner, OGLETREE DEAKINS NASH SMOAK & STEWART, PC, Raleigh, North Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

Stephanie Walker sued Petsense, LLC and Tractor Supply Company (collectively, "Petsense") for claims arising from alleged slander under North Carolina law. Walker later moved to voluntarily dismiss the suit pursuant to Fed. R. Civ. P. 41(a)(2) ("Rule 41"). Six days after the district court granted the motion, Walker filed a "Notice of Withdrawal of Motion for Voluntary Dismissal." The district court interpreted the notice as a refusal to comply with its order. The court ultimately vacated the dismissal and reinstated the proceedings. It further sanctioned Walker, ordering her to pay attorneys' fees for the willful disobedience of a court order.

The court subsequently granted summary judgment to Petsense, finding that Walker's slander *per se* claim was barred by qualified privilege. Walker now appeals the sanction order and grant of summary judgment. She claims that her conduct does not rise to the level of sanctionable behavior, and that summary judgment is improper because record evidence proves the existence of actual malice. We hold that the district court did not make findings sufficient to support the sanction and did not err in granting summary judgment. Accordingly, we vacate the sanction order and affirm the grant of summary judgment.

I.

Plaintiff-Appellant Stephanie Walker owned and operated an animal shelter named Rita's Angels Second Chance Animal Rescue and Sanctuary ("Rita's") in North Carolina. Through Rita's, Walker developed relationships and a positive reputation with other

3

rescues and volunteers in Lee County, North Carolina. Defendant-Appellee Petsense operates a pet store that hosted adoption events. At all times relevant to this appeal, Diane Hamilton was the assistant manager of Petsense and Mapauna Maria Naki Sheaves was Petsense's general manager. In January 2019, Rita's and Petsense entered an agreement where Walker would retrieve cats from local kill shelters and give them to Petsense's adoption center. Walker was responsible for veterinarian care of the cats and providing the cats to Petsense. Petsense, in return, was responsible for daily care of the cats—including supplying food and water and maintaining a sanitary living space. Petsense displayed the cats in its store-front adoption center.

## A.

### i.

In June 2019, Petsense employees contacted Walker about four kittens she provided to Petsense—Reggy, Lucy, Addy, and Chong—who became ill. The parties disagree on what transpired next. Sheaves testified that she made many requests for Walker, or someone else from Rita's, to retrieve the kittens and provide care. Specifically, Sheaves recalled that she tried calling Walker's phone number, J.A. 263, reaching out to Walker on Facebook Messenger, J.A. 264, and directly addressing Walker about the kittens whenever she was in the store on other business. J.A. 262. In a face-to-face encounter, Walker told Sheaves that Debbie Oldham, another person associated with the Rita's–Petsense agreement, would retrieve the kittens. *Id.* But when Sheaves asked Oldham about the arrangement, Oldham did not know what Sheaves was talking about. J.A. 263. According to Sheaves, this game of tag lasted around one to two weeks. J.A. 262.

4

In contrast, Walker asserts that on June 10, 2019, Sheaves contacted her and asked her to pick up the kittens and take them to a veterinarian to be treated. Walker recalls replying that she would pick them up. She testified that she picked the kittens up and took them to the veterinarian on the same day. J.A. 530.

ii.

On June 14, 2019, the Animal Welfare Section of North Carolina's Department of Agriculture and Consumer Services ("NCACS") received an anonymous complaint. During the course of litigation, it was revealed that the spouse of Petsense's assistant manager— Hamilton's husband— was the author of the complaint. The complaint read:

> My wife wotks [sic] for petsense in sanford, nc and they have a cat adoption center. A rescue known as Ritas second chance a lady named stephanie walker. She has been keeping and trying to adopt sick kittens.. the store has told her numerous times to come get them out due to weeks of having the runs and bloody stool and they still refuse to provide care… please help by inspecting this so called rescue. We need proper rescues and not animal flippers and hoarders masked as rescues.. Thank you for your time

J.A. 331. NCACS inspector Elizabeth Garner went to Petsense to investigate the complaint the same day it was received. J.A. 332. Sergeant Gilstrap of the Lee County Sheriff's office accompanied Garner. *Id.* Garner and Sergeant Gilstrap witnessed the four Rita's kittens in a bad state. *Id.* Reggy had a red and raw anus with diarrhea in his litter pan and splattered in his cage; Lucy and Addy were housed together and had diarrhea in their litter pans and splattered in the cage; and Chong had matted fur with missing patches of hair and dry dandruff flakes on his back. *Id.* Garner and Sergeant Gilstrap asked Hamilton if the cats had received care. *Id.* Hamilton answered that they had not and explained that Sheaves was trying to contact Rita's to address the issue. *Id.* Hamilton also stated that the illness

5

had been going on for around a week. *Id.* Sergeant Gilstrap made contact with Oldham and told her to remove the cats and get veterinary help the same day. *Id.; see also* J.A. 647. During the on-site investigation, Garner contacted Sheaves by phone, and Sheaves told Garner that she had been in contact with Rita's for a week to pick up the cats. J.A. 333.

Sergeant Gilstrap concluded there was probable cause to charge Walker with misdemeanor animal cruelty under North Carolina law. J.A. 336. Lee County issued a criminal summons, but the charge was later dismissed. J.A. 034.

## B.

Walker asserts that these events destroyed her reputation in the animal welfare community. She argues she can no longer rescue animals from shelters because a background check reveals the animal cruelty charge, that animal shelters and organizations have terminated their relationship with her, and that people give her dirty looks and refuse to speak to her in public. J.A. 020-024. Consequently, she initiated a *pro se* complaint in August 2020.[1] At the motion to dismiss stage, the district court construed the complaint as a defamation action. It found that the complaint alleged both libel and slander. *Moore v. Cox*, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004) ("North Carolina retains two distinct defamation torts— slander, which involves spoken words, and libel, which involves written

---

[1] Walker initially filed suit in Lee County Superior Court of the State of North Carolina. J.A. 11. After removal to the United States District Court for the Eastern District of North Carolina, she amended her complaint. The amended complaint is the operative pleading in this case, and what we refer to when we use the word "complaint."

6

words.") (citation omitted).  The libel allegation arose from a Facebook post that appeared on Hamilton's husband's Facebook page.  The court dismissed it because Hamilton's husband is not a Petsense employee, so his actions are not attributable to Petsense. J.A. 093.  Next, the court turned to the four allegations of slander.  It dismissed three instances, but found that the last, a slander *per se* allegation, survived.  The court held that the complaint stated a prima facie slander *per se* case regarding the statements Hamilton and Sheaves made to Sergeant Gilstrap and Garner.  J.A. 094.  The complaint sufficiently alleged that the employees knowingly made false and malicious statements to the authorities, and that was enough to survive dismissal.  J.A. 094.  Thus, slander *per se* is the only surviving claim for purposes of this appeal.  *See* J.A. 097.

i.

Walker remained *pro se* until October 6, 2021—16 days before the court-imposed discovery deadline.  Her newly acquired counsel filed a motion to extend all deadlines until February 21, 2022.  The court partially granted the request and extended the discovery deadline only to December 17, 2021.  Unsatisfied, Walker's counsel filed a motion for voluntary dismissal pursuant to Rule 41.  Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").  Petsense filed a motion in opposition and requested that if the court chose to grant the motion, that it also award attorneys' fees for any work that could not be reused in future litigation as a condition of dismissal.  J.A. 219.

The district court granted the dismissal and imposed two conditions: that the suit be refiled no later than six months from the date of the dismissal order, and that Walker pay

7

the reasonable costs and attorneys' fees accrued in defending the dismissal motion and the motion to extend the discovery deadline. J.A. 692. Six days after the court entered its order, Walker filed a "Notice of Withdrawal of Motion for Voluntary Dismissal." J.A. 694. Walker argued that she was allowed to withdraw based on our sister circuits' caselaw allowing a plaintiff to withdraw voluntary dismissal if the court-imposed conditions are too onerous. J.A. 695 (citing *Lau v. Glendora Unified Sch. Dist.*, 792 F.2d 929, 930 (9th Cir. 1986) (holding that voluntary dismissal under Fed. R. Civ. P. 41(a)(2) "grants to the plaintiff the option to refuse the voluntary dismissal if the conditions imposed are too onerous."); *see also id.* (collecting cases holding same). The notice stated that the burden of covering Petsense's attorneys' fees contributed to the decision to withdraw the voluntary dismissal. [2] *Id.*

The district court ultimately vacated the dismissal and reinstated the case, but also sanctioned Walker for refusing to comply with the court ordered dismissal. *Walker v. Petsense, LLC*, No. 1:20CV738, 2022 WL 1984135, at *1 (M.D.N.C. June 6, 2022) ("[T]he Court interprets [Walker's] Notice of Withdrawal . . . as a notice of [Walker's] refusal to comply with the Court's Order. The issue for the Court, therefore, is to determine the proper consequence of [Walker's] refusal."). The district court found that it had the inherent power to assess attorneys' fees for the willful disobedience of a court order. *Id.*

---

[2] Walker filed her motion for voluntary dismissal on December 3, 2021. The court granted the motion on May 19, 2022. During the almost six months that the motion was pending, the parties continued litigating the case. Petsense filed for summary judgment on February 1, 2022.

at *2 (relying on *Chambers v. NASCO*, 501 U.S. 32, 44-46 (1991)). Specifically, the district court found that "an award of $10,288.50 is reasonable to compensate [Petsense] for the prejudice they have suffered as a result of [Walker's] highly questionable and dilatory actions." *Walker*, 2022 WL 1984135, at *3.

ii.

Petsense filed for summary judgment and argued that it was entitled to qualified privilege, which would protect the statements its employees made to Sergeant Gilstrap and Garner. It argued that no evidence in the record points to the showing Walker must make to overcome the privilege, so summary judgment is proper. The district court agreed. It found that qualified privilege existed because the Petsense employees made the statements in question to the proper parties during a privileged occasion. J.A. 743–745. Thus, a good faith presumption attached to the statements, requiring Walker to point to evidence of actual malice to survive summary judgment. J.A. 745. The court determined that no evidence supported such a finding and granted summary judgment.

Walker timely appealed the sanction order and the grant of summary judgment. We address each in turn.

II.

A.

We review the initial award of attorneys' fees for an abuse of discretion. *In re MRRM, P.A.*, 404 F.3d 863, 869 (4th Cir. 2005). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of

9

the evidence." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1374 (4th Cir. 1991). The clearly erroneous review "is properly focused upon fact-finding processes rather than directly upon fact-finding results. The appellate function is to insure that the process shall have been principled." *Miller v. Mercy Hospital, Inc.*, 720 F.2d 356, 361 (4th Cir. 1983). "[T]his Court's conviction that a mistake has been committed may be properly based upon a conclusion that the findings under review are not supported by substantial evidence in the record." *Butts v. United States*, 930 F.3d 234, 238 (4th Cir. 2019) (internal quotation marks omitted).

Generally, a court must award attorneys' fees in accordance with the American Rule. "Under the American Rule, each party bears its own costs of litigation unless statutory authority exists for an award of attorneys' fees or an exception to the rule applies." *Williams v. Prof. Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002). However, the Supreme Court has instructed that although the American Rule "prohibits fee shifting in most cases," assessing attorneys' fees against counsel is within a court's inherent power if the reason for the sanction falls into one of three "narrowly defined circumstances." *Chambers*, 501 U.S. at 45. First, a court may award attorneys' fees to a party whose litigation efforts directly benefits others. *Id.* Second, the court's inherent power is proper when the sanction is a result of "the willful disobedience of a court order." *Id.* (internal citation omitted). Third, a court may levy a sanction of attorneys' fees when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (internal quotation marks and citation omitted). Under the third category, a court is free to award attorneys' fees if it finds "that fraud has been practiced upon it, [] that the very temple of justice has been

10

defiled," or if a plaintiff "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Id.* at 46 (internal citation omitted). In essence, "the American Rule effectively limit[s] a court's inherent power to impose attorney[]s' fees as a sanction to cases in which a litigant *has engaged in bad-faith conduct or willful disobedience of a court's orders*." *Id.* at 47 (emphasis added).

i.

Walker argues that the sanction is an abuse of discretion because her conduct does not implicate the narrow circumstances enumerated in *Chambers*. Petsense retorts that the court properly used its inherent power to levy attorneys' fees because Walker's unilateral notice of withdrawal from a court ordered obligation is "highly questionable and dilatory." *Walker*, 2022 WL 1984135, at *3.

After reviewing the motions filed in the district court regarding the voluntary dismissal, the subsequent "Notice of Withdrawal of Voluntary Dismissal," and the district court's sanction order, we conclude that the district court's findings are insufficient to support an award of attorneys' fees. Specifically, the court's sanction findings are inadequate to show that Walker's actions fell within the limited categories authorizing the court's inherent power. Thus, "the findings under review are not supported by substantial evidence in the record," *Butts*, 930 F.3d at 238, and the district court abused its discretion in assessing attorneys' fees.

ii.

The Supreme Court has long cautioned that a court's inherent power "'ought to be exercised with great caution.'" *Chambers*, 501 U.S. at 43 (citing *Ex parte Burr*, 9 Wheat.

11

529, 531 (1824)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. Given the limited nature of a court's inherent power to levy a sanction of attorneys' fees, we determine if the district court abused its discretion under *Chambers* by examining whether the court's "fact-finding processes," as opposed to "fact-finding results," reveals a principled decision. *Miller*, 720 F.2d at 361.

The district court found that Walker willfully disobeyed a court order—i.e., the grant of voluntary dismissal—and showed bad faith by prejudicing Petsense with the withdrawal of dismissal, inconveniencing the court, and causing Petsense delay and confusion. *Walker*, 2022 WL 1984135, at *2-3. Walker's conduct, the district court decided, amounted to "highly questionable and dilatory actions." *Id.* at *3.

The record does not support these conclusions. In the pleadings below, Petsense opposed the voluntary dismissal, but clearly informed the court that the "[p]laintiff should be given the opportunity to withdraw her Motion to Dismiss and have the matter proceed on [Petsense's] Motion for Summary Judgment if the conditions are not acceptable." J.A. 219. The parties did not become aware of what conditions the court would impose until the motion was granted, nearly six months after briefing had concluded. The conditions were announced in the order granting dismissal, and thus instantly became a binding obligation. *See* J.A. 692–693. Six days later, Walker filed the "Notice of Withdrawal," and asked for the action to be reinstated in part because of the burden imposed by the court's conditions. J.A. 695–696. ("[G]iven . . . the burden that would be placed on this individual plaintiff in covering the attorneys' fees of Defendants' counsel . . . Plaintiff does not desire to have the litigation dismissed and would rather obtain a ruling . . . .").

12

First, the facts cannot support a finding that the reinstatement of the case caused Petsense delay and confusion because it was Petsense that first offered, and put the court on notice, of the possibility of Walker reinstating the case if she found the conditions unacceptable. Second, the sanction order states that the unilateral notice of withdrawal amounts to a refusal to comply, and suggests that the proper procedure, i.e., what Walker *should* have done to escape a sanction, was move to amend or vacate the order. *Walker*, 2022 WL 1984135, at *1. But the sanction order fails to explain how the notice of withdrawal amounts to a waste of time that rises to the level of bad faith or willful disobedience, particularly when it was easily interpreted as a motion to vacate and subsequently granted. *See* J.A. 732; *see also Chambers*, 501 U.S. at 47 ("[T]he American Rule effectively limit[s] a court's inherent power to impose attorney[]s' fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders.").

iii.

We hold that the district court's assessment of the evidence is clearly erroneous because its findings are insufficient to demonstrate that Walker's conduct falls within the scope of its inherent authority. Further, the findings as explained are not supported by substantial evidence in the record. *See Butts*, 930 F.3d at 238. Accordingly, the district

13

court abused its discretion in assessing attorneys' fees, and the district court's sanction order is vacated.[3]

### B.

"We review a district court's decision granting summary judgment *de novo*, applying the same legal standards as the district court and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Turner v. United States*, 736 F.3d 274, 280 (4th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Walker argues that the district court's findings at the motion to dismiss stage apply to the summary judgment analysis under the law of the case doctrine, and thus bars Petsense from utilizing the qualified privilege defense at summary judgment. *See TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (holding that under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). We disagree. At the dismissal

---

[3] Walker further encourages the court to adopt our sister circuits' interpretation of Rule 41(a)(2). *See, e.g.*, *Paysys Int'l, Inc. v. Atos IT Services, Ltd.*, 901 F.3d 105, 108–109 (2d Cir. 2018) (holding that "the plaintiff has an option not to go forward with a Rule 41(a)(2) dismissal if the conditions specified by the court seem too onerous," and emphasizing that "it is the *plaintiff*, rather than the court, who has the choice between accepting the conditions and obtaining dismissal and . . . withdrawing his dismissal."). Although this court has never considered the issue, having already found an abuse of discretion in the district court's *Chambers* analysis, we need not address it today.

stage, the court ruled that Petsense was not entitled to qualified privilege because the complaint alleged enough to survive dismissal on the slander *per se* claim. J.A. 095. Thus, the court concluded, "[w]hile Defendants may be able to establish that they meet [the qualified privilege] standard in subsequent litigation, they have not met their burden here." *Id.* The court ruled that Petsense may establish qualified privilege in later litigation. Petsense has met its burden at summary judgment.

i.

North Carolina law requires a showing of malice to recover for slander. *Izydore v. Tokuta*, 775 S.E.2d 341, 349 (N.C. Ct. App. 2015).[4] When a plaintiff establishes slander *per se*, malice is presumed.[5] *Id.* However, the presumption of malice is rebutted when qualified privilege exists. *Kwan-Sa You v. Roe*, 387 S.E.2d 188, 193 (N.C. Ct. App. 1990).

> A defamatory statement is qualifiedly privileged when made (1) in good faith, (2) on a subject matter (a) in which the defendant has an interest or (b) in reference to which the declarant has a right or duty, (3) to a person having a corresponding interest, right, or duty, (4) on a privileged occasion, and (5) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Shillington v. K-Mart Co.*, 402 S.E.2d 155, 159 (N.C. Ct. App. 1991) (citation omitted).

"Whether the occasion is privileged is a question of law for the court." *Clark v. Brown*,

---

[4] "Federal courts sitting in diversity apply the substantive state law that would apply had the plaintiff filed the case in state court." *Hickerson v. Yamaha Motor Co.*, 882 F.3d 476, 480 (4th Cir. 2018). Here, we apply North Carolina defamation law.

[5] Relevant here, slander *per se* is "an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; [or] (2) an allegation that impeaches the plaintiff in his trade, business, or profession." *Losing v. Food Lion, L.L.C.*, 648 S.E.2d 261, 263 (N.C. Ct. App. 2007).

393 S.E.2d 134, 138 (N.C. Ct. App. 1990) (internal quotation marks omitted). If the Defendant establishes qualified privilege, the burden shifts back to the Plaintiff who must prove actual malice before she can recover. *You*, 387 S.E.2d at 193; *see also Towne v. Cope*, 233 S.E.2d 624, 627 (N.C. Ct. App. 1977) ("Where the occasion is privileged, the presumption of law is that the defendant acted in good faith, and the burden is on the plaintiff to prove that the publication was made with actual malice in order to destroy the qualified privilege."). Actual malice can be shown by evidence of the declarant's ill-will or personal hostility, evidence that the declarant published the statement with knowledge of falsity, or evidence of reckless disregard for the truth or a high degree of awareness of its probable falsity. *You*, 387 S.E.2d at 193.

The district court properly found that qualified privilege exists in this case. Nevertheless, Walker argues that qualified privilege should not attach because a Petsense employee "invited the interaction" that led to the privilege. Opening. Br. at 47. Specifically, Walker contends that the author of the anonymous report to NCACS— Hamilton's husband—is a Petsense employee. Since the report went beyond reporting the health of the kittens and instead intentionally shifted blame to Walker, she asserts Petsense should not benefit from the resulting privilege. *See* Opening. Br. at 47–49. North Carolina courts have never held that inviting privilege by baiting an investigation nullifies qualified privilege, and we need not reach that conclusion here. The overwhelming evidence on the record leads to the reasonable conclusion that the author of the anonymous report was not a Petsense employee. *See, e.g.*, J.A. 331 (the NCACS anonymous complaint stating "[m]y wife," not the author himself, "wotks [sic] for petsense …"); J.A. 054–055 (Petsense

16

motion to dismiss explaining that Hamilton's husband, the author of the anonymous complaint, is not employed by Petsense); J.A. 067–068 (Walker's opposition to motion to dismiss describing Hamilton as a Petsense employee, but not describing her husband, the author of the anonymous complaint, as a Petsense employee).

Walker points to a single sentence in an unsigned, dateless declaration to support her view that Hamilton's husband is an employee: "The husband of Diane Hamilton who was a key carrier took it upon himself to [review Rita's] on a third-party site." J.A. 684. Walker argues that a reasonable inference can be drawn from this statement to support a conclusion that Diane Hamilton's husband was a Petsense employee. Not so. "Whether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary. In the end, the non-moving party must do more than present a scintilla of evidence in its favor." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (internal quotations marks and citations omitted). The record, with all *reasonable* inferences drawn in Walker's favor, demonstrates that Hamilton's husband was not an employee, therefore Petsense did not invite the privilege.

ii.

Next, Walker argues that even if the privilege does attach, the record points to evidence of actual malice of the declarants, so summary judgment is improper. She maintains that Hamilton and Sheaves knew or should have known of the falsity of their statements to Garner. *See* J.A. 332-333 (Hamilton and Sheaves telling Garner and Seargeant Gilstrap that the kittens had not received care, and Walker had been contacted multiple times to pick them up). At the very least, Walker argues, these statements

17

represent a reckless disregard for the truth because both employees should have had access to veterinarian records that proved Walker had already cared for the kittens. Additionally, Walker points to the record showing she only received two confirmed text messages. Thus, she argues, Hamilton's and Sheaves' statements that Petsense employees had contacted Walker for over a week are not supported by the record.

Both arguments fail because they amount to mere speculation. First, the record does not state (or even suggest) that Hamilton or Sheaves viewed any veterinarian records that would have given actual knowledge of Walker's treatment of the kittens. Walker invites the court to reverse summary judgment on the mere assumption that Hamilton and Sheaves must have seen such documents. We are bound to decline such invitation. *See Sylvia Dev. Corp.*, 48 F.3d at 818 ("[A]n apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find the facts in his favor.") (cleaned up). Here, Walker has presented no evidence to support her version of the facts. Second, Sheaves' deposition testimony confirms that she believes she contacted Walker for at least a week to pick up the kittens. J.A. 281. Although the record, when taken in the light most favorable to Walker, may only reflect two verifiable points of contact, Petsense does not carry the burden of establishing the timeline at this stage. Instead, to survive summary judgment, Walker is required to show actual malice, not mere falsity. *Averitt v. Rozier*, 458 S.E.2d 26, 29 (N.C. Ct. App. 1995) ("If the plaintiff cannot show actual malice, the qualified privilege becomes an absolute privilege, and there can be no recovery even though the statement was false.").

18

Accordingly, Walker has not shown actual malice and the district court's grant of summary judgment is affirmed.

## III.

For the foregoing reasons, we vacate the district court's sanction order and affirm the grant of summary judgment to Petsense.

*VACATED IN PART,*
*AFFIRMED IN PART*

19