JAMES L. PROFFITT v. GREENSBORO NEWS & RECORD, INC., AND JOHN R. ALEXANDER

No. 8718SC792

(Filed 6 September 1988)

**Libel and Slander § 16— statement about public officer in newspaper—no evidence that defendant knew statement was false or recklessly disregarded falsity**

    The trial court properly entered summary judgment for defendants in plaintiff's action alleging libel in an editorial published in defendant newspaper where there was no clear and convincing evidence that defendants knew it was false, or acted with reckless disregard as to whether it was false, to state that plaintiff former sheriff "lied when he initially denied having sex with" the girlfriend of a prisoner in plaintiff's custody.

APPEAL by plaintiff from *DeRamus, Judge.* Order entered 7 May 1987 in Superior Court, GUILFORD County. Heard in the Court of Appeals 14 January 1988.

*Robert S. Cahoon and Charles A. Lloyd for plaintiff appellant.*

*Smith Helms Mulliss & Moore by Richard W. Ellis and Alan W. Duncan for defendant appellees.*

COZORT, Judge.

Plaintiff, a former Sheriff of Guilford County, filed an action alleging libel in an editorial published in the defendant Greensboro News and Record (hereinafter "the newspaper"). The editorial stated that "Sheriff Proffitt openly lied to the public last year when he initially denied either having sex with the woman or performing favors for the inmate." The trial court granted summary judgment for defendants. We affirm.

Plaintiff was elected Sheriff of Guilford County in 1982, narrowly defeating the incumbent officeholder. In October of 1985, the defendant newspaper learned of an ongoing State Bureau of Investigation (S.B.I.) probe into charges that plaintiff and former Guilford County Assistant District Attorney Robert Johnston had in 1983 agreed to do certain favors for a Guilford County inmate, Ronnie Douglas, in exchange for sex with Ronnie's then girlfriend, Carmen Jobe. (Ronnie Douglas and Carmen Jobe had married by October of 1985, and Carmen Jobe will hereinafter be referred to as Carmen Douglas.)

Three of the newspaper's reporters interviewed plaintiff. The newspaper published a news story on 20 October 1985 stating that plaintiff "denied having sex with the woman." In the news article Johnston admitted the sexual encounter but denied he bestowed favoritism to Ronnie Douglas. Over the next month, the newspaper published several more articles repeating the statement that plaintiff denied having sex with Carmen Douglas.

In late November of 1985, plaintiff called a press conference at which he released a lengthy statement. In that statement, plaintiff did not specifically deny having sex with Carmen Douglas; however, he denied he did favors for Ronnie Douglas in exchange for sex with Carmen Douglas. On 7 December 1985, the newspaper published a news article stating that plaintiff had admitted to S.B.I. investigators that he had sex with Carmen Douglas. On 7 January 1986, plaintiff was indicted for bribery.

Plaintiff testified during his criminal trial in March of 1986. He admitted that he had sex with Carmen Douglas, but he denied the sex was in exchange for favors to Ronnie Douglas. Plaintiff was found not guilty of bribery on 26 March 1986.

On 27 March 1986, the newspaper published an editorial entitled "Remove the Sheriff," which was written by John R. Alexander, also a named defendant in this action. This editorial calling for the removal of plaintiff as sheriff contained the following statements:

> It is their elected sheriff, after all, who has abused and sullied his office. We submit that Sheriff Proffitt has violated the trust voters placed in him. . . .
>
> . . . Incidentally, Sheriff Proffitt openly lied to the public last year when he initially denied either having sex with the woman or performing favors for the inmate.
>
>     \*　\*　\*　\*
>
> . . . How can they be sure he won't compromise his office again?

On 28 March 1986, counsel for plaintiff wrote to the newspaper, claiming that the language from the 27 March editorial quoted above was false, and requesting a "full and fair correction, apology and retraction." In a letter to plaintiff's counsel dated 1 April 1986, defendant Alexander denied "that there are any grounds to retract the editorial of March 27." Plaintiff then filed suit, alleging that the statements quoted above were false and defamatory. After defendants filed an answer denying any defamation, defendants moved for summary judgment. Defendants filed several affidavits and a copy of all the newspaper articles related to the allegations concerning plaintiff. Plaintiff filed an affidavit, and the 828-page transcript from plaintiff's bribery trial was filed with the trial court. The trial court granted summary judgment for defendants on 8 May 1987. Plaintiff appeals.

Under N.C. Gen. Stat. § 1A-1, Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." After reviewing the affidavits and trial transcript filed with the trial court, and after reviewing the applicable law, we find the trial court was correct in ruling that defendants were entitled to judgment as a matter of law.

In actions for defamation, the nature or status of the parties involved is a significant factor in determining the applicable legal standards. The parties do not dispute that the plaintiff, a former Sheriff of Guilford County, is a public official for the purposes of this action; and there is no dispute that the defendants, the Greensboro News and Record and its Editorial Page Editor, are members of the press. Thus, the basic legal standard is the rule clearly established by the United States Supreme Court more than 20 years ago:

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

*New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 11 L.Ed. 2d 686, 706, 84 S.Ct. 710, 726 (1964).

When a libel action brought by a public figure is at the summary judgment stage, the appropriate question for the trial judge is whether the evidence in the record would allow a reasonable finder of fact to find either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 91 L.Ed. 2d 202, 217, 106 S.Ct. 2505, 2515 (1986).

Plaintiff contends that this statement in the 27 March 1986 editorial is defamatory: "Incidentally, Sheriff Proffitt openly lied to the public last year when he initially denied either having sex with the woman or performing favors for the inmate." Thus, to prevent summary judgment for defendants, plaintiff must forecast clear and convincing evidence that the statement in question was false, and that defendants either knew it was false or acted with reckless disregard as to the statement's truth or falsity. Upon reviewing the forecast of evidence, we find plaintiff has failed to offer clear and convincing evidence of either knowledge of falsity or careless disregard of truth or falsity.

In his brief, plaintiff contends that defendants made a false statement when they stated in the 27 March article that plaintiff "openly lied to the public last year when he denied either having

sex with the woman or performing favors for the inmate." [*sic*] Plaintiff contends that the statement is false because plaintiff contends he did not deny having sex with Carmen Douglas. Instead, he argues, he had denied that he had sex with her *in exchange for favors* for Ronnie Douglas. In support of his argument that defendants knew it was false to say plaintiff had lied by denying he had sex with Carmen Douglas, plaintiff points to a 4 January 1986 editorial in the newspaper which stated: "Proffitt has consistently denied exchanging favors for sex, though he has not specifically denied having sex with the woman." This statement, plaintiff contends, is evidence that defendants knew it was false to state that plaintiff denied having sex with Carmen Douglas. We find plaintiff's argument unpersuasive.

We first note that plaintiff has failed to accurately quote the passage he claims is defamatory. The allegedly libelous statement, as originally published by the defendants on 27 March 1987, reads:

> Incidentally, Sheriff Proffitt openly lied to the public last year when he *initially* denied either having sex with the woman or performing favors for the inmate. (Emphasis added.)

Plaintiff failed to include the word "initially" when he quoted the statement in his complaint, and he failed to include the word "initially" in the statement in his brief. Whether inadvertent or intentional, the omission of the word "initially" is significant, because the statement takes on a slightly different meaning when "initially" is omitted. It is important to a complete understanding of the facts that the allegedly defamatory statement be considered exactly as written.

To prevent summary judgment from being entered against him, plaintiff must forecast clear and convincing evidence that the newspaper printed a false statement when it stated that plaintiff "openly lied to the public last year when he initially denied . . . having sex with the woman . . . ." If plaintiff can forecast evidence of that statement's falsity, he must then forecast clear and convincing evidence that defendants knew the statement was false, or acted with reckless disregard as to its truth or falsity.

The first newspaper article concerning the sex-for-favor allegations appeared on 20 October 1985. It contained the following statements:

> Proffitt denied having sex with the woman. . . .
>
> *   *   *   *
>
> Proffitt . . . says he knows Carmen Douglas but adamantly denies having sex with her. He said he gave Ronnie Douglas no special treatment in the jail.

The newspaper repeated plaintiff's denials in an editorial published 23 October 1985. The newspaper published additional news articles repeating plaintiff's denials on 24 October and on 15 November. On 18 November 1985, the newspaper published an article stating:

> Proffitt has emphatically denied having sex with Carmen Douglas. He says he provided minimal favors to Douglas in the Guilford County Jail because Douglas was an important prosecution witness in connection with several murder cases.

On 21 November 1985, the newspaper published an article stating:

> Last month, Proffitt denied to reporters that he had any relationship with Carmen Douglas. Asked again today if he ever had sex with the woman, Proffitt said, "This is an allegation that Mrs. Douglas has made. I will not respond to allegations." He declined further comment.

On 22 November 1985, plaintiff held a news conference where he released a 23-paragraph statement responding to the sex-for-favor allegations. There was no language dealing specifically with whether plaintiff had sex with Carmen Douglas. The statement denied that plaintiff had done any favors in exchange for sex. Plaintiff did not answer questions at the news conference.

In an article published 7 December 1985, the newspaper reported that plaintiff had acknowledged to the S.B.I. a sexual relationship with Carmen Douglas, but that plaintiff denied providing special favors for sex. On 4 January 1986, defendants published the editorial stating that plaintiff had "not specifically denied having sex with the woman." In a column authored by

Giles Lambertson published in the defendant newspaper on 10 January 1986, these statements appeared:

> While he first denied ever having sex with the younger woman, he has since publicly retreated from outright denial. Then he declined to say one way or the other. . . .

> \* \* \* \*

> To SBI investigators, Proffitt reportedly has admitted an intimate relationship with Douglas. But publicly he still won't confirm or deny. This leaves his constituents to speculate whether he did or didn't.

In a news article published on 13 March 1986, the newspaper stated: "Proffitt initially denied to reporters any relationship with Carmen Douglas but has since refused to comment when specifically asked if he ever had sex with her."

At his criminal trial, plaintiff testified that he never denied to reporters for the newspaper the specific allegation of having sex with Carmen Douglas. He testified that he was always asked whether he had sex for favors and that he always denied that allegation.

Plaintiff contends that his testimony from the criminal trial and the 4 January 1986 editorial are sufficient evidence to preclude granting summary judgment for defendants. We do not agree. At most, this evidence can be viewed as *some* evidence that plaintiff did not initially deny the specific allegation of having sex with Carmen Douglas or initially deny the specific allegation of granting favors to Ronnie Douglas. It certainly cannot be viewed as *clear and convincing* evidence that defendants knew it was false, or acted with reckless disregard of the truth, when the newspaper stated that plaintiff lied when he *initially* denied either having sex with Carmen Douglas or doing favors for Ronnie Douglas. Other testimony from plaintiff's criminal trial is instructive on this point. Ed Pons, an attorney on plaintiff's staff when the allegations arose, was present when plaintiff was interviewed by the newspaper's reporters in October of 1985. At plaintiff's criminal trial in March of 1986, Pons testified:

A. . . . .

So the question about sex was posed to the sheriff during that first interview as part of a compound question relating to sex for favors.

Q. Were you present at a second interview with those individuals?

A. Yes, sir.

Q. When did the second interview take place?

A. I believe it was the day after the first interview.

Q. Who was present on that occasion?

A. On that occasion Sheriff Proffitt, myself, Stan Swafford, Mark McDonald and Ed Williams were present. Ed Williams, Mark Donald, Stan Swafford all being reporters for the *Greensboro News and Record.*

Q. Was the defendant asked at that time specifically whether or not he had had sex with Carmen Douglas?

A. Yes, sir.

*  *  *  *

Q. . . . What was the defendant's response to that question?

A. I cannot tell you the sheriff's exact words. The sheriff said something to the effect, "I've already covered that. I've already answered those allegations. I'm not going to answer any more questions having to do with those allegations. Go to something new. Ask me something new."

Q. Was he asked what relationship, if any, he had with Carmen Douglas?

A. Yes, sir.

Q. What was his response to that question?

A. He replied with a similar response, that he had already been over that and talked about that and would not answer any new questions in that area.

Q. Had that been asked him the day before?

A. Not to my best recollection, no, sir.

Q. Had the question whether or not he had had sex with Carmen Douglas been asked the day before?

A. Not by itself, no, sir.

Q. Was he asked what type of relationship he had with Carmen Douglas?

A. I believe he was, yes, sir.

Q. What was his response?

A. Again, I cannot give you his exact response. I know that during this interview a number of questions along these lines were put to the sheriff by Ed Williams. And to the best of my recollection, he always responded to the questions by stating that he had covered that area and would not go over it again or some other response of that nature. The sheriff never answered one of the [sic] those questions stating something to the effect: "I deny ever having sex with that girl." He never made a specific denial, but he answered the questions in such a way as to say, "I've already answered that. Let's go on to something new."

*  *  *  *

Q. Did he ever admit during that that he had sex with Carmen Douglas?

A. No, sir, he did not.

Q. So during the interview did he ever admit having sex with Carmen Douglas?

A. No, sir, he did not.

Q. Is it your statement that he never expressly denied having sex with Carmen Douglas?

A. He never specifically and expressly denied in his own words having sex with Carmen Douglas during the second interview. He answered questions in such a way as to be ambiguous in his answers.

Q. Did you take his answers to be that he was denying ever having sex with Carmen Douglas?

A. That is a difficult question for me to answer. At that interview — at the time of that interview he had already admitted to me having sex with Carmen Douglas, so I knew what he knew at that time. I took his answers to be evasive and sidestepping. I didn't take his answers to be a specific denial of having sex. It seemed to me that he was just really trying to avoid the question.

* * * *

Q. Was there any admission during the course of this second interview that he had sex with Carmen Douglas?

A. There was no specific admission, no, sir. Now, again I'm not trying to avoid answering your question. It was very difficult for me at that interview to be a judge of exactly what was going on. He did not specifically deny having sex with Carmen Douglas, but in the ambiguous way in which he answered Ed Williams' questions, I can see how it may have been taken as a denial.

* * * *

A. If I may repeat that again. In the ambiguous manner in which he responded to Ed Williams' questions, I can see exactly how the reporter could have taken that as a denial. If I may explain further.

Q. Yes, sir, please do.

A. In other words, when these questions were asked of him, specific questions: "What was your relationship with Carmen? Did you have sex with Carmen?" When that type of question was asked, the sheriff would respond: "I've already answered those allegations. I will not go further." And by referring to his earlier negative answer, I can see that the reporter would take that as a denial.

Q. All right, sir; and in fact in response to specific questions regarding whether or not Sheriff Proffitt had had sex with Carmen Douglas?

A. That's correct, specific questions put to him by Ed Williams.

At most, there is a conflict in the evidence as to whether plaintiff initially denied having sex with Carmen Douglas. There is no clear and convincing evidence that defendants knew it was false, or acted with reckless disregard as to whether it was false, to state that plaintiff "lied when he initially denied having sex with Carmen Douglas." We find that the trial court's order of summary judgment should be, and is hereby,

Affirmed.

Judges PARKER and GREENE concur.