JIMMY M. VARNER, Plaintiff-Appellant v. JOE J. BRYAN, V. CHARLES BULLOCK, and GREG C. JONES, Defendants-Appellees

No. 9210SC1199

(Filed 1 March 1994)

1. **Contracts § 181 (NCI4th)— tortious interference with contract—no legal malice shown—summary judgment proper**

    The trial court properly entered summary judgment for defendant town council members on plaintiff town manager's claim for tortious interference with contract, since defendants would be liable only upon a showing that defendants acted with legal malice in terminating plaintiff's employment, and, even if plaintiff was terminated by defendants for personal or political reasons, as his evidence tended to show, such termination was neither a wrongful act nor one in excess of defendants' authority and therefore not legally malicious.

    **Am Jur 2d, Interference §§ 39-48.**

2. **Libel and Slander § 17 (NCI4th)— allegedly defamatory statements about town manager—status as public official**

    Plaintiff town manager was a public official for purposes of the review of allegedly defamatory statements made after his termination by defendant town council members.

    **Am Jur 2d, Libel and Slander §§ 130-134.**

3. **Libel and Slander § 41 (NCI4th)— town manager's claim of defamation against city council—ill will—knowledge of falsity of statements—insufficient evidence of malice**

    The trial court properly entered summary judgment for defendant town council members on plaintiff town manager's claim for defamation, since plaintiff's forecast of evidence of personal animosity and ill will toward him by defendants was not sufficient to permit a finding of actual malice by clear and convincing evidence, and since there was insufficient evidence that defendants knew or failed to ascertain from

VARNER · v. BRYAN

[113 N.C. App. 697 (1994)]

readily available information the falsity of their statements about possible misuse of public funds to make unauthorized contributions to plaintiff's 401(k) retirement plan.

**Am Jur 2d, Libel and Slander § 444.**

Appeal by plaintiff from order entered 27 July 1992 by Judge Henry V. Barnette, Jr., in Wake County Superior Court. Heard in the Court of Appeals 21 October 1993.

Plaintiff, the former Town Manager of Knightdale, N.C., brought this action seeking damages for defamation, intentional infliction of emotional distress, and tortious interference with contract, against defendants who, at all times pertinent to this appeal, were members of the Knightdale Town Council. The record reflects that plaintiff was hired by the Council on 27 March 1989; the terms of his employment included an annual salary of $36,400.00, an annual five percent contribution to a 401(k) retirement plan, and other benefits. At the time plaintiff was hired, all town employees received a 401(k) contribution equal to five percent of their annualized salary.

In June of 1990, the Council adopted the town's annual budget for 1990-1991. As a part of the budget, the Council reduced the 401(k) contributions for all town employees except police department employees from five percent to one percent. According to plaintiff, he sought a clarification from Mayor Billy Wilder and Town Attorney Joseph Howell that the reduction in 401(k) contributions did not apply to his position, and received assurances that the reduction did not apply to him. Defendants, however, were unaware of those assurances.

Following passage of the budget, Elaine Holmquist, town finance director, acted to put into effect the 401(k) contribution reduction affected by the new budget. Ms. Holmquist understood that contributions to plaintiff's retirement plan were to be reduced along with all other 401(k) contributions. Plaintiff informed Ms. Holmquist that the contribution to his retirement plan was supposed to remain at five percent and Ms. Holmquist confirmed this fact with "someone in authority." However, Ms. Holmquist did not discuss the matter with any of the defendants. Contributions were made to plaintiff's 401(k) account at five percent, even though the town budget funded this expense at only one percent.

Sometime during 1990, the three defendants became dissatisfied with plaintiff's performance as manager and, after discussions among themselves and with others, decided to seek his resignation or terminate his employment. Plaintiff's evidence tended to show that defendants' dissatisfaction with his performance was personal in nature, having to do with plaintiff's opinion that defendants Bullock and Bryan were violating certain town ordinances in connection with their businesses, or was politically motivated; defendants' evidence tended to show that they considered plaintiff's job performance to be inadequate. On 4 December 1990, during an executive session of the Council, defendants informed plaintiff that they were dissatisfied with his job performance and requested his resignation. On the following day, the Council met in open session and voted to terminate plaintiff's employment by a vote of 3-2, with each defendant voting in favor of termination. Plaintiff's discharge generated a large amount of publicity in the local media and among the town's citizens, much of which was in opposition to plaintiff's termination. In response, defendants made certain statements to the media and to citizens about their reasons for voting to terminate plaintiff, to the effect that plaintiff had been terminated for unsatisfactory job performance.

In March 1991, approximately four months after plaintiff's discharge, finance director Holmquist prepared a memorandum seeking revisions to the town's 1990-1991 budget. Included in the revisions was a request for funds sufficient to contribute to plaintiff's retirement plan at the rate of five percent. This request was necessary because the funds which had been appropriated the previous June for payment of plaintiff's retirement contributions were nearly depleted due to the fact that the town had contributed to his plan at a rate of five percent while budgeting that expense at only one percent.

Defendant Bryan first learned of the five percent contributions to plaintiff's plan by virtue of this memorandum. At the next regular Council meeting, on 13 March 1991, defendant Bryan made the following motion which plaintiff alleges was defamatory:

> Mr. Mayor, in order to protect our citizens and maintain their public trust and confidence, I motion to direct the town attorney to investigate this situation and determine if there was a misappropriation of public funds or other wrongdoing

involved. Further, for the town attorney to report his findings and recommendations at the April town board meeting.

Plaintiff also alleged that defendants made additional statements suggesting that plaintiff had misappropriated public funds, and that some of these statements were publicized in newspaper reports. Plaintiff alleged that the statements were false and damaged him in his "reputation, office, profession, and means of livelihood." He also alleged that by their conduct, defendants had intentionally interfered with his employment contract with the Town of Knightdale and had intentionally inflicted emotional distress upon him.

The trial court granted defendants' motion for summary judgment on all claims. Plaintiff appealed.

*Womble, Carlyle, Sandridge & Rice, by G. Eugene Boyce and Susan S. McFarlane, for plaintiff-appellant.*

*Michael B. Brough & Associates, by Michael B. Brough and Jan S. Simmons, for defendant-appellees.*

MARTIN, Judge.

The record on appeal contains six assignments of error, all of which are related to the entry of summary judgment dismissing plaintiff's claims. Initially, we note that plaintiff has not brought forward in his brief any reason or argument in support of his assignment of error relating to the dismissal of his claim for intentional infliction of emotional distress and has, therefore, abandoned the assignment of error. N.C. R. App. P., Rule 28(b)(5). Therefore, we will consider only those assignments of error relating to the entry of summary judgment dismissing plaintiff's claims for tortious interference with contract and defamation. For the reasons stated herein, we affirm the judgment of the trial court.

G.S. § 1A-1, Rule 56(c) provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The party moving for summary judgment has the burden of establishing a lack of any triable issue of fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E.2d 350 (1985); *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). In *Collingwood v. G.E. Real*

## VARNER v. BRYAN

[113 N.C. App. 697 (1994)]

*Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989), the Supreme Court characterized this burden as follows:

> The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. [Citations omitted.] By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial.

*See also, Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405 (1982); *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974). With these rules in mind, we review the record below to determine whether the trial court properly granted defendants' motion for summary judgment.

### I. Tortious Interference With Contract

[1] We first consider plaintiff's claim for tortious interference with contract. In order to establish a claim for tortious interference with contract, plaintiff was required to forecast evidence of the following elements:

> First, that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. Second, that the outsider had knowledge of the plaintiff's contract with the third person. Third, that the outsider intentionally induced the third person not to perform his contract with the plaintiff. Fourth, that in so doing the outsider acted without justification. Fifth, that the outsider's act caused the plaintiff actual damages.

*Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954) (citations omitted).

The trial court's order of summary judgment was based in part on its conclusion that defendants were not outsiders to the contract with the Town of Knightdale. The court reasoned that defendants, as members of the Town Council, hired plaintiff and therefore were not outsiders to the contract against whom an action for interference with contract could be brought. However, in this State, one who is not an outsider to the contract may be liable

for interfering therewith if he acted maliciously. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282 (1976); *You v. Roe*, 97 N.C. App. 1, 387 S.E.2d 188 (1990); *Murphy v. McIntyre*, 69 N.C. App. 323, 317 S.E.2d 387 (1984). It is not enough, however, to show that a defendant acted with actual malice; the plaintiff must forecast evidence that the defendant acted with legal malice. *Id.* A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties. *Murphy*, at 328-29, 317 S.E.2d at 401. The plaintiff's evidence must show that the defendant acted without any legal justification for his action. *Childress*, 240 N.C. 667, 84 S.E.2d 176.

> Indeed, actual malice and freedom from liability for this tort may coexist. If the outsider has a sufficient lawful reason for inducing the breach of contract, he is exempt from liability for so doing, no matter how malicious in actuality his conduct may be. A "malicious motive makes a bad act worse, but it cannot make that wrong which, in its own essence, is lawful."

*Id.* at 675, 84 S.E.2d at 182, *quoting Bruton v. Smith*, 225 N.C. 584, 36 S.E.2d 9 (1945).

We agree with defendants that plaintiff did not forecast evidence tending to show that defendants acted with legal malice when terminating plaintiff's employment. As plaintiff concedes, a town manager serves at the pleasure of the town council and it is within the scope of a town council member's duties, and therefore within defendants' authority, to discharge a town manager. Even if plaintiff was terminated by defendants for personal or political reasons, as his evidence tends to show, such termination was neither a wrongful act nor one in excess of defendants' authority and therefore not legally malicious. *You*, 97 N.C. App. 1, 387 S.E.2d 188. In the absence of any forecast of evidence demonstrating that defendants acted with legal malice, defendants' motion for summary judgment on plaintiff's claim for tortious interference with contract was properly granted.

## II. Defamation

[2] We next consider the sufficiency of plaintiff's evidentiary forecast regarding his claim for defamation. "In actions for defamation, the nature or status of the parties involved is a significant factor in determining the applicable legal standards." *Proffitt v.*

*Greensboro News & Record*, 91 N.C. App. 218, 221, 371 S.E.2d 292, 293 (1988). Where the plaintiff is a "public official" and the allegedly defamatory statement concerns his official conduct, he must prove that the statement was "made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 11 L.Ed.2d 686, 706 (1964). The rule requiring "public officials" to prove actual malice is based on First Amendment principles and reflects the Court's consideration of our national commitment to robust and wide-open debate of public issues. *Id.*, at 270, 11 L.Ed.2d at 701. Thus, we must first consider whether plaintiff was a "public official" at the time the allegedly defamatory statements were made.

During oral argument, plaintiff's counsel acknowledged that plaintiff was a "public official" while he was employed as Town Manager, but contended that plaintiff's "public official" status ceased when his employment as Town Manager was terminated. Defendants argued that for purposes of this defamation action, plaintiff's termination has little significance regarding his status as a "public official." We agree with defendants.

In *Rosenblatt v. Baer*, 383 U.S. 75, 15 L.Ed.2d 597 (1966), the plaintiff, formerly a county supervisor, brought suit against the defendant, a local newspaper columnist, alleging that a certain article written by the defendant was libelous. The article at issue was published after the plaintiff's employment by the county had been terminated. The Court stated that there could be no serious contention that the plaintiff's termination had any decisional significance, reasoning that although the plaintiff was no longer employed as a public official, his performance in that capacity continued to be the subject of broad public interest and debate. *Id.*, at 87, 15 L.Ed.2d at 606.

Undoubtedly, a public official's job performance will often continue to be the subject of important public debate and discussion long after the termination of his employment in a public office. *Rosenblatt's* extension of "public official" status beyond the duration of an official's employment is consistent with the *New York Times* policy favoring robust and open debate of public issues. Thus, we hold that plaintiff was a "public official" for purposes of our review of the allegedly defamatory statements made after his termination as Town Manager.

[3]   When a defamation action brought by a "public official" is at the summary judgment stage, the appropriate question for the trial judge is whether the evidence presented is sufficient to allow a jury to find that actual malice had been shown with convincing clarity. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 91 L.Ed.2d 202, 217 (1986); *Proffitt, supra*. Plaintiff contends that he satisfied his burden of forecasting actual malice by offering clear and convincing evidence that defendants knew the statements were false, or acted with reckless disregard as to their truth or falsity. We disagree.

Plaintiff first argues that his evidentiary burden was satisfied by evidence that hostility existed between himself and defendants as a result of "previous run-ins" due to plaintiff's assertions that defendants Bullock and Bryan were in non-compliance with various town ordinances. In support of this contention, plaintiff directs us to the decision of this Court in *You v. Roe, supra*. In *You*, citing *Ponder v. Cobb*, 257 N.C. 281, 126 S.E.2d 67 (1962), we held that actual malice may be proven by evidence of ill-will or personal hostility on the part of the defendant. However, the plaintiffs in *Ponder* and *You*, unlike plaintiff in the present case, were not "public officials" who were required to prove "actual malice" under the *New York Times* standard, i.e., that the statement was published with actual knowledge of its falsity or with reckless disregard of whether or not it was false. Moreover, the decisions in *Rosenblatt, supra*, and *Masson v. New Yorker Magazine, Inc.*, 501 U.S. ---, 115 L.Ed.2d 447 (1991), make it clear that evidence of personal hostility does not constitute evidence of "actual malice" under the standard set forth in *New York Times Co. v. Sullivan*.

In *Rosenblatt*, the Court considered and found erroneous a jury charge which defined "malice" as including " 'ill will, evil motive, intention to injure . . . .' " *Rosenblatt*, at 84, 15 L.Ed.2d at 604. Likewise, in *Masson*, at ---, 115 L.Ed.2d at 468, the Court stated that "[a]ctual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." Plaintiff's forecast of evidence of personal animosity and ill will toward him by defendants was not sufficient to permit a finding of "actual malice" by clear and convincing evidence so as to preclude entry of summary judgment in favor of defendants.

.

Plaintiff next argues that he produced a sufficient forecast of evidence of "actual malice" by presenting evidence that defendants called for an investigation with respect to an alleged misappropriation of public funds due to the increased contributions to plaintiff's retirement account after they knew, or had reason to know, that the implication of wrongdoing was false. Plaintiff argues that at the time the allegations were made defendants had been put on notice that the five percent 401(k) contributions to plaintiff's account were proper because Ms. Holmquist had informed them that the payments had been approved by "someone in authority", either the mayor or the town attorney. We disagree.

Assuming, without deciding, that "actual malice" under the *New York Times* standard may be shown by evidence that a defendant published a defamatory statement after receiving notice of its falsity, plaintiff's forecast of evidence in the present case does not present a genuine issue of fact as to whether defendants did so. The evidence showed that contributions to the town employees' 401(k) retirement plans are controlled by the town budget as approved by the Town Council, which did not authorize a five percent contribution to plaintiff's retirement plan. Plaintiff acknowledges that none of the defendants were party to, or had knowledge of, the discussions between himself, the mayor, the town attorney, or Ms. Holmquist regarding the applicability to plaintiff of the reduction in contributions as passed in the budget. Moreover, there is no indication in the record, and plaintiff does not argue, that either the mayor or the town attorney had authority to unilaterally approve expenditures not provided for in the budget. Therefore, evidence that defendants were informed, at a later meeting when the budget revisions were brought before the Council for approval, that the mayor or town attorney had approved plaintiff's instruction to Ms. Holmquist to contribute to his 401(k) account in an amount in excess of that authorized by the previously adopted budget does not constitute evidence that defendants had noticed that their subsequent statements were false.

We also reject plaintiff's contention that "actual malice" may be shown by evidence that defendants failed to avail themselves of available means for ascertaining the falsity of the statements. In *New York Times*, the plaintiff presented evidence that the defendant could have ascertained the falsity of the statements at issue by consulting its own previous news articles. In its discussion of this evidence, the Court stated:

VARNER v. BRYAN

[113 N.C. App. 697 (1994)]

> The mere presence of the stories in the files does not, of course, establish that the Times "knew" the advertisement was false, since the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication of the advertisement . . . . We think the evidence against the Times supports at most a finding of negligence in failing to discover the misstatements, and is constitutionally insufficient to show the recklessness that is required for a finding of actual malice.

*New York Times Co.*, at 287-288, 11 L.Ed.2d at 710-711. Likewise, in *St. Amant v. Thompson*, 390 U.S. 727, 730, 20 L.Ed.2d 262, 266-267 (1968), the Court held that evidence that the defendant failed to verify the veracity of his statements with persons who might have known the true facts fell short of proving the defendant's reckless disregard for the accuracy of his statements. Thus, to the extent the plaintiff's evidence may show that defendants made statements about his 401(k) contributions without utilizing readily available means for verifying the veracity of their statements, such evidence was insufficient to allow a finding by clear and convincing evidence that defendants acted with "actual malice" so as to preclude summary judgment in their favor.

In summary, we hold that defendants have shown through discovery that plaintiff cannot produce evidence to support an essential element of his claim for defamation, i.e., that any defamatory statements which defendants may have made were made with actual malice. Because we base this holding upon the constitutional grounds that a public figure cannot recover damages for defamation relating to his official conduct in the absence of proof of actual malice, as set forth in *New York Times Co. v. Sullivan, supra*, we need not decide the additional questions presented by the briefs, i.e., whether the statements were defamatory, and, if so, defamatory *per se* or were susceptible of more than one interpretation, one of which was defamatory, *see Renwick v. News and Observer*, 310 N.C. 312, 312 S.E.2d 405, *cert. denied*, 269 U.S. 858, 83 L.Ed.2d 121 (1984); whether the statements were absolutely privileged as made by defendants in the performance of legislative duties, *see Ramsey v. Cheek*, 109 N.C. 270, 13 S.E. 775 (1891); or whether the statements fell within the range of constitutionally protected statements of opinion relating to matters of public concern which were not probably false, *see Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L.Ed.2d 1 (1990).

Affirmed.

Judges GREENE and JOHN concur.