OLA M. LEWIS, Plaintiff v. EDWARD LEE RAPP, Defendant

No. COA11-1188

(Filed 1 May 2012)

**1. Libel and Slander—libel per se—false statement—insufficient evidence of actual knowledge**

The trial court did not err in a libel action by denying plaintiff's motion for partial summary judgment and granting defendant's motion for summary judgment with regard to a 9 April publication. Although it was undisputed that defendant made false statements about plaintiff in the publication, plaintiff failed to forecast any evidence that defendant acted with actual malice.

**2. Libel and Slander—libel per se—defamatory accusation—not constitutionally protected opinion—actual malice**

The trial court erred in a libel action by denying plaintiff's motion for partial summary judgment with regard to a 12 April publication. Defendant's accusation in the publication was subject to one interpretation; that the accusation was defamatory; and the accusation was not a constitutionally protected opinion. It was, therefore, defamation *per se* as a matter of law. Furthermore, plaintiff forecast sufficient evidence to show that defendant acted with knowledge, or at the least with reckless disregard, of the falsity of his publication.

Appeal by plaintiff from order entered 19 July 2011 by Judge William R. Pittman in Brunswick County Superior Court. Heard in the Court of Appeals 7 February 2012.

*Marshall, Williams & Gorham, L.L.P., by Lonnie B. Williams, and Stratas & Weathers, L.L.P., by Nicholas A. Stratas, Jr., for plaintiff-appellant.*

*Stevens Martin Vaughn & Tadych, PLLC, by Hugh Stevens, for defendant-appellee.*

HUNTER, Robert C., Judge.

Ola M. Lewis ("plaintiff") appeals from the trial court's 19 July 2011 order denying her partial motion for summary judgment and granting Edward Lee Rapp's ("defendant") motion for summary judgment. After careful review, we affirm in part, and reverse and remand in part.

LEWIS v. RAPP

[220 N.C. App. 299 (2012)]

## Background

In April 2010, plaintiff was the serving Senior Resident Judge of Judicial District 13B in North Carolina and was engaged in a campaign to retain her seat in the November 2010 election. She was also a vocal supporter of William Rabon who was running for the North Carolina State Senate. Defendant, a citizen of North Carolina, was a known supporter of Rabon's opponent, Bettie Fennell. Defendant also volunteered to serve as Fennell's "Media Strategist" without receiving compensation.

On 9 April 2010, defendant posted a blog entry on Facebook titled "Dirty Politics by the good ol boys." The blog entry was also posted on Carolina Talk Network. In this post, defendant criticized Rabon and further stated: "When sitting judges campaign for a candidate, in clear violation of the seventh canon of the NC Code of Judicial conduct[,] [w]e are clearly into dirty politics" (hereinafter referred to as "the 9 April publication"). That same day, plaintiff's attorney emailed defendant and informed him that plaintiff was a candidate for office and that Canon 7B(2) of the Code of Judicial Conduct allows a candidate to endorse any other candidate seeking election to any office. Plaintiff's attorney also cited a memorandum issued by Chief Judge John Martin on 26 February 2010 in which he reiterated to members of the judiciary what conduct was permissible and what conduct was prohibited by the Code of Judicial Conduct during the 2010 election cycle. The memorandum specifically cited to Canon 7B(2) and stated that a judge was permitted to endorse any candidate seeking office so long as the judge is also a judicial candidate.

On 12 April 2010, defendant posted another blog entry on Facebook and Carolina Talk Network titled: "Apologies, Corrections, Explanations and Amplifications on my Blogs." Defendant stated in pertinent part:

> I have spent this past weekend in prayer, mediation [sic], and contemplation. . . . First, let me apologize for my comment about the sitting judge being in violation [of] The North Carolina Code of Judicial Conduct. I was wrong. This can be done only by proper disciplinary proceedings and I have neither right nor authority to make that judgment and will let the proper authorities make that determination, if and when, it is brought before them. I have read, top to bottom, The North Carolina Code of Judicial Conduct and have voiced my opinion based on the pertinent articles provided in *appendix 1* at the

end of this blog. I also solicited the opinion of a friend of mine who happens to be an attorney. We both agreed that there is probable cause for such action. Read the appendix and make up your own mind. . . . It is my belief that for any Republican office holder to campaign openly for any candidate in a primary is wrong. Office holders cannot appear to be private citizens. The power and authority of their office precludes this.

(hereinafter referred to as "the 12 April publication") (Emphasis omitted). Defendant included portions of the Code of Judicial Conduct in the appendix to his blog entry; however, he did not include Canon 7B(2).

On 14 April 2010, plaintiff filed a complaint alleging that defendant's publications were libelous *per se* because the false accusations damaged plaintiff's reputation as a judge. Plaintiff sought monetary damages as well as a temporary restraining order, a preliminary injunction, and a permanent injunction.

After discovery was complete, defendant moved for summary judgment on 3 February 2011. On 9 June 2011, plaintiff moved for partial summary judgment, asking the trial court to enter judgment "as a matter of law as to Defendant's words constituting libel *per se*." On 19 July 2011, the trial court denied plaintiff's motion for partial summary judgment and granted defendant's motion for summary judgment. Plaintiff timely appealed to this Court.

## Discussion

**[1]** Plaintiff argues on appeal that the trial court erred in denying her motion for partial summary judgment and granting defendant's motion for summary judgment. "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). Consequently, we review *de novo* the trial court's determination that defendant did not commit libel *per se* in the 9 April and 12 April publications.

"In order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002).

> In North Carolina, the term defamation applies to the two distinct torts of libel and slander. Libel *per se* is "a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace."

*Id.* at 29, 568 S.E.2d at 898 (quoting *Phillips v. Winston-Salem/Forsyth County Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994), *disc. review denied*, 340 N.C. 115, 456 S.E.2d 318 (1995)). "Whether a publication is libelous *per se* is a question of law for the court." *Id.* at 31, 568 S.E.2d at 899.

"[I]n order to be libelous *per se*, defamatory words *'must be susceptible of but one meaning* and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided.'" *Id.* at 30-31, 568 S.E.2d at 898-99 (quoting *Flake v. News Co.*, 212 N.C. 780, 786, 195 S.E. 55, 60 (1938)) (emphasis added). "When examining an allegedly defamatory statement, the court must view the words within their full context and interpret them 'as ordinary people would understand' them." *Id.* at 31, 568 S.E.2d at 899 (quoting *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 319, 312 S.E.2d 405, 409, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984)).

"In actions for defamation, the nature or status of the parties involved is a significant factor in determining the applicable legal standards." *Proffitt v. Greensboro News & Record*, 91 N.C. App. 218, 221, 371 S.E.2d 292, 293 (1988). "[T]he First Amendment sets limits on a public figure's ability to recover for defamation." *Wells v. Liddy*, 186 F.3d 505, 532 (4th Cir. 1999).

> Where the plaintiff is a public official and the allegedly defamatory statement concerns his official conduct, he must prove that the statement was made with actual malice—that is, *with knowledge that it was false or with reckless disregard of whether it was false or not.* The rule requiring public officials to prove actual malice is based on First Amendment principles and reflects the Court's consideration of our national commitment to robust and wide-open debate of public issues.

*Varner v. Bryan*, 113 N.C. App. 697, 703, 440 S.E.2d 295, 299 (1994) (emphasis added) (internal citation and quotation marks omitted). "When a defamation action brought by a 'public official' is at the summary judgment stage, the appropriate question for the trial judge is whether the evidence presented is sufficient to allow a jury to find that actual malice had been shown with convincing clarity." *Id.* at 704, 440 S.E.2d at 299.

It is important to acknowledge that "evidence of personal hostility does not constitute evidence of 'actual malice' " *Id.* at 704, 440 S.E.2d at 300. Additionally, "reckless [disregard] is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267 (1968).

### A. 9 April Publication

We will first address the 9 April publication, which plaintiff contends was libelous *per se* and disseminated with actual malice. Defendant admits that this publication contained the false statement that plaintiff was in violation of the Code of Judicial Conduct, but defendant argues that plaintiff cannot forecast any evidence that defendant acted with actual malice, an essential element of her claim. We agree with defendant.

Defendant claims that he did not have actual knowledge at the time of the publication that plaintiff was a candidate for office and therefore permitted by the Code of Judicial Conduct to endorse another candidate running for office. Defendant claims that he believed the statement he made to be true when he made it. There is no evidence to show otherwise. Defendant was consistent in his deposition, stating that he did not know that plaintiff was a candidate for office when he wrote the 9 April publication. Plaintiff claims that defendant *should have known* that she was running for reelection because she was recognized, along with the other candidates, at the Brunswick County Republican Party executive committee meeting on 8 April 2010. Defendant was in attendance at that meeting. While plaintiff is correct in stating that the information was made public and perhaps defendant should have known that she was a candidate, plaintiff has failed to show actual knowledge. Consequently, we are left with only defendant's assertions in his depositions that he did not, in fact, have actual knowledge of plaintiff's candidacy.

Plaintiff has also failed to show that defendant acted with reckless disregard of the truth. Again, defendant consistently stated that he was unaware that plaintiff was running for office. Undoubtedly, defendant could have conducted some research before making his false assertions in the 9 April blog entry; nevertheless, it appears from all accounts that defendant believed that plaintiff was a sitting judge and not running for office. As such, defendant in this case may have acted negligently when publishing the blog entry, but there is no evidence that he acted maliciously. *See Varner*, 113 N.C. App. at 705, 440 S.E.2d at 300 (rejecting "plaintiff's contention that 'actual malice' may be shown by evidence that defendants failed to avail themselves of available means for ascertaining the falsity of the statements"). Despite plaintiff's claim that defendant should have known that she was a candidate for office, plaintiff is unable to show, by reference to any materials obtained during discovery, that defendant "in fact entertained serious doubts as to the truth of [the] publication." *St. Amant*, 390 U.S. at 731, 20 L. Ed. 2d at 267 (holding that evidence that the defendant did not verify the truth of his statements was insufficient to prove that the defendant acted with reckless disregard).

In sum, it is undisputed that defendant made false statements about plaintiff in the 9 April publication. However, plaintiff has failed to forecast any evidence that defendant acted with actual knowledge or reckless disregard with "convincing clarity." *Varner*, 113 N.C. App. at 704, 440 S.E.2d at 299. In other words, there is no issue of material fact with regard to actual malice.

### B. 12 April Publication

**[2]** Next, we address the 12 April publication, which plaintiff contends was also libelous *per se*. Plaintiff claims that defendant was still accusing her of being in violation of the Code of Judicial Conduct, as he did in the 9 April publication. Defendant argues that he did not affirm the false statement that was present in the 9 April publication; rather, he informed his readers that he incorrectly stated that plaintiff was in violation of the Code of Judicial Conduct in his 9 April publication and he was merely asserting his *opinion* that "probable cause" existed for the "proper authorities" to take disciplinary action against plaintiff.

The pivotal question then is whether defendant's statement was a constitutionally protected opinion. "Whether a statement constitutes fact or opinion is a question of law for the trial court to decide. Like all questions of law, it is subject to *de novo* review on appeal."

*Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 n.12 (4th Cir. 1987) (internal citations omitted). "Political speech regarding a public election lies at the core of matters of public concern protected by the First Amendment." *Wiggins v. Lowndes County*, 363 F.3d 387, 390 (5th Cir. 2004). "The United States Supreme Court has held that statements of opinion relating to matters of public concern which do not contain provable false connotations are constitutionally protected." *Gaunt v. Pittaway*, 135 N.C. App. 442, 448, 520 S.E.2d 603, 608 (1999) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 111 L. Ed. 2d 1 (1990)). In other words, "[r]hetorical hyperbole and expressions of opinion not asserting provable facts are protected speech." *Daniels v. Metro Magazine Holding Co., L.L.C.*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006), *appeal dismissed and disc. review denied*, 361 N.C. 692, 654 S.E.2d 251 (2007). "In determining whether a statement can be reasonably interpreted as stating actual facts about an individual, courts look to the circumstances in which the statement is made." *Id.* "Specifically, we consider whether the language used is loose, figurative, or hyperbolic language, as well as the general tenor of the article." *Id.* at 540, 634 S.E.2d at 590 (citation and quotation marks omitted).

Even "where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials," the public figure must still establish the existence of actual malice. *Milkovich*, 497 U.S. at 20, 111 L. Ed. 2d at 19. Therefore, we must determine whether defendant's statement was merely an opinion on a matter of public concern. If it was, then defendant is not liable for defamation and the inquiry ends. If, however, defendant disseminated a false, defamatory statement about plaintiff that was not an opinion, then we must still determine whether defendant acted with actual malice.

Before addressing whether defendant was asserting an opinion, we will first determine whether defendant's statement was susceptible to more than one interpretation and whether the statement was damaging to plaintiff. Upon review of the 12 April publication in context, there is only one logical interpretation—defendant was still attempting to convince the readers that plaintiff was in violation of the Code of Judicial Conduct when she supported Rabon's campaign. Defendant admitted in the 12 April publication that he was not in a position to make the ultimate determination that plaintiff had violated the Code of Judicial Conduct, and he apologized for reaching that ultimate determination in the 9 April publication. Nevertheless,

defendant continued to lodge the same accusation in the 12 April publication as he presented in the 9 April publication—that plaintiff was in violation of the Code of Judicial Conduct. This accusation undoubtedly tended to impeach plaintiff in her trade or profession since it accused her, a sitting judge, of violating the Code of Judicial Conduct that she had sworn to uphold. *Cohen v. McLawhorn*, ___ N.C. App. ___, ___, 704 S.E.2d 519, 527 (2010) ("North Carolina has long recognized the harm that can result from false statements that impeach a person in that person's trade or profession—such statements are deemed defamation *per se*.").

Next, we will determine whether the accusation was a constitutionally protected opinion. It is undisputed that defendant's statement in the 12 April publication constituted political speech regarding a public election. Plaintiff strictly contends that defendant's statement contained provable false connotations and did not, therefore, constitute an opinion. We hold that defendant's 12 April publication contained provable false connotations and was not defendant's subjective opinion.

Although defendant expressly stated that it was his opinion that plaintiff had violated the Code of Judicial Conduct, an individual "cannot preface an otherwise defamatory statement with 'in my opinion' and claim immunity from liability[.]" *Daniels*, 179 N.C. App. at 539, 634 S.E.2d at 590. Defendant claimed in the 12 April publication that he had read the Code of Judicial Conduct from "top to bottom" and it was his "opinion" that "probable cause" existed for the "proper authorities" to take "action." Defendant was aware at that point that plaintiff was a candidate for judicial office. Having read the Code of Judicial Conduct from "top to bottom," he was also aware that as a candidate for office, plaintiff was permitted to campaign on behalf of another candidate pursuant to Canon 7B(2). Defendant had been told by plaintiff's attorney that Chief Judge Martin had issued a memorandum in which he stated that a sitting judge seeking reelection was permitted to campaign for any other candidate. Whether plaintiff was, in fact, in violation of the Code of Judicial Conduct could be easily investigated and proven false. Defendant ignored the proof that plaintiff was not in violation of the Code of Judicial Conduct and chose to assert a provable *false* accusation against plaintiff.[1]

_____

1. We note that defendant did express an opinion when he stated: "It is my belief that for any Republican office holder to campaign openly for any candidate in a primary is wrong. Office holders cannot appear to be private citizens. The power and authority of their office precludes this." This statement, unlike the accusation that plaintiff was in violation of the Code of Judicial Conduct, cannot be proven true or

Moreover, defendant included portions of the Code of Judicial Conduct in the appendix to his blog entry so that his readers could "make up [their] own mind[s]"; however, he did not include Canon 7B(2), which exonerates plaintiff of any wrongdoing. Defendant did, however, include Canon 7B(1), which, if read in isolation, would indicate that a judge may not endorse a political candidate. The inclusion of Canon 7B(1), coupled with the exclusion of Canon 7B(2), can only be perceived as a deliberate attempt by defendant to substantiate the false accusation contained in the publication. "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 18-19, 111 L. Ed. 2d at 18; *see Moldea v. New York Times Co.*, 15 F.3d 1137, 1144 ("Just as a speaker is not immunized from liability simply by prefacing otherwise defamatory statements with the words 'In my opinion . . .,' defamatory assessments based on incorrect 'facts' stated by the speaker are also actionable."), *aff'd as modified*, 22 F.3d 310 (D.C. Cir. 1994).

Not only did defendant attempt to mislead the readers by failing to attach Canon 7B(2), he also stated that he had discussed the matter with his friend, an attorney, and they agreed that there was "probable cause" for disciplinary action to be taken by the proper authorities. Defendant was clearly trying to bolster the validity of his false accusation by asserting that someone with expertise in the field of law concurred with his assessment. *See Action Repair, Inc. v. American Broadcasting Cos., Inc.*, 776 F.2d 143, 147 (7th Cir. 1985) (acknowledging that a statement by a judge in support of an allegedly defamatory comment was more prejudicial "than similar speculation from multitudes of anonymous lay people" because the judge is perceived as an expert in legal matters).

In sum, defendant's 12 April publication was framed as an opinion; however, it presented the same false accusations that were contained in the 9 April publication. Defendant attempted to convince the readers of the publication that plaintiff was in violation of the Code of Judicial Conduct by claiming that he had read the Code of Judicial Conduct from "top to bottom"; supplying only the portion of the Code of Judicial Conduct that would support his accusation; and

---

false. Defendant is entitled to his opinion that it is "wrong," or even unethical, for an office holder to campaign for a candidate. An opinion that a judge has acted unethically is quite different from an accusation that a judge has committed an act that could potentially lead to official disciplinary action.

claiming that an attorney agreed with his assessment. We hold that plaintiff's accusation in the 12 April publication was subject to one interpretation; that the accusation was defamatory; and that the accusation was not a constitutionally protected opinion. It was, therefore, defamation *per se* as a matter of law.

Still, plaintiff must show that defendant acted with actual malice. "[T]hat is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Varner*, 113 N.C. App. at 703, 440 S.E.2d at 299 (citation and quotation marks omitted). Plaintiff was unable to do so with regard to the 9 April publication. We hold that sufficient evidence was forecast by plaintiff to show that defendant acted with knowledge, or at the least with reckless disregard, of the falsity of his 12 April publication. Defendant claimed that he was unaware that plaintiff was running for reelection when he wrote the 9 April publication. He further claimed that since he thought she was a sitting judge who was not running for reelection, she was in violation of the Code of Judicial Conduct. In essence, defendant's only defense with regard to the 9 April publication was that he did not know that plaintiff was running for office. Defendant could no longer claim ignorance on 12 April after he had been informed that plaintiff was, in fact, running for reelection. At that time he knew that plaintiff was a candidate and that according to Canon 7B(2) she was permitted to support another candidate. Nevertheless, defendant sought to convince the readers of his blog that plaintiff was in violation of the Code of Judicial Conduct. The evidence tends to establish that he acted, at the very least, with reckless disregard, i.e., he entertained serious doubts as to the truth of his publication. We hold that "the evidence presented is sufficient to allow a jury to find that actual malice ha[s] been shown with convincing clarity." *Id.* We hold that a genuine issue of material fact existed for jury determination with regard to actual malice.

## Conclusion

Based on the foregoing, we hold that the trial court did not err in granting defendant's motion for summary judgment and denying plaintiff's motion for partial summary judgment with regard to the 9 April publication. We hold that the trial court erred in denying plaintiff's motion for partial summary judgment and granting defendant's motion for summary judgment with regard to the 12 April publication. We reverse and remand for entry of partial summary judgment for plaintiff because the 12 April publication constituted libel *per se* as a

IN RE G.B.R.

[220 N.C. App. 309 (2012)]

matter of law. The issue of actual malice and damages is left for jury determination.

Affirmed in part; reversed and remanded in part.

Judges THIGPEN and McCULLOUGH concur.